[No. 43965.    En Banc.    April 15, 1976.]

G. HARLAN LEWIS, ET AL, *Appellants*, v. THE CITY OF MEDINA, *Respondent.*

*Philip P. Malone,* for appellants.

*Benson, Chadwick, Stege & Wines, Stephen F. Chadwick, Jr.,* and *Kirk R. Wines,* for respondent.

WRIGHT, J.—This action involves the refusal of the City of Medina to issue a building permit. The Superior Court issued a writ of mandamus requiring the City to issue the permit. The Court of Appeals reversed and the property owners have appealed.

Due to the changing positions of the parties as to being appellants or respondents, we find it more clear and convenient to refer to G. Harlan Lewis and Harry G. Lewis as "plaintiffs" and the City of Medina as "defendant."

Plaintiffs' parents owned all of tract G of DeVries Lake

Washington Tracts in 1942. Some time thereafter they sold the northerly 75 feet of tract G, which was triangular in shape. The parents had built a home near the center of the tract. Later the father died and his widow, Melita G. Lewis, with the cooperation of her sons, plaintiffs herein, sold the home. In the sale there was conveyed, for a consideration of $45,000, not only the land on which the house was located, but also a triangular-shaped tract bounded on the east by 84th Avenue N.E. with a 75-foot frontage on said avenue. The conveyance of that tract left Mrs. Lewis owning an odd-shaped tract, sometimes referred to as a trapezoid, with an area of approximately 5,150 square feet.

Mrs. Lewis desired a small house on the land which remained in her ownership. She employed an architect, Roland W. Wilson, who prepared plans for such a house. Through some misunderstanding, Mr. Wilson did not know of the conveyance of the triangular tract, but thought it was merely an easement. The plans which he prepared called for a substantial part of the house to be on the land which had been conveyed. The City of Medina had not been formed at that time and Mr. Wilson went to the King County engineer's office to get a building permit.

The employee in the engineer's office relied upon the plans presented by Mr. Wilson, including the statement that the area which in fact had been conveyed was only an easement. In such reliance the building permit was issued in April 1952, although no construction was undertaken.

In 1955 the City of Medina was incorporated. Mrs. Lewis died, leaving the plaintiffs herein as the owners of the 5,150 square feet of property.

In February 1972, plaintiffs applied to the City of Medina for a building permit. The matter was referred to the Board of Adjustment. The board held two hearings, received reports from the planning commission and members of the board personally made an inspection. After that, the Board of Adjustment made extensive findings of fact and supplemental findings of fact and entered a detailed deci-

sion. The Board of Adjustment denied the application for a building permit.

Prior to the incorporation of the City of Medina, the King County requirement for a single family residence was 6,000 square feet (minimum lot size). After the City was incorporated, ordinances were adopted calling for sizes of lots for single family residences to be at least 16,000 square feet.

After incorporation, the City of Medina adopted certain ordinances relative to zoning. One of those ordinances contained what has been referred to as a "grandfather clause." It reads:

> 5-1.15 Separate Ownership Exception: Lot Size and Frontage.
>
> Where a parcel of land was in separate ownership at the time of the adoption of the City's applicable residential land use density regulations and such parcel would have qualified as a building site under minimum lot size and frontage regulations applicable at the time of its acquisition by such owner, said parcel shall, without the necessity of a variance, when possessed of frontage equal to at least 85% of that otherwise required, qualify as a single building site notwithstanding otherwise applicable lot size and frontage regulations, but shall in all other respects be subject to land use regulations of the district of its location.

Medina ordinance No. 148 § 1-1963.

Plaintiffs base their claim upon that ordinance, upon the 1952 building permit, and upon the constitutional prohibitions against the taking of property without due process of law. The constitutional argument rests upon the undisputed fact that without a building permit plaintiffs' land had little, if any, value.

■ First, we shall discuss the constitutional question. It is a well-settled law that zoning is a constitutionally permissible exercise of the police power. *State ex rel. Wenatchee Congregation of Jehovah's Witnesses v. Wenatchee*, 50 Wn.2d 378, 312 P.2d 195 (1957). *State ex rel. Miller v. Cain*, 40 Wn.2d 216, 242 P.2d 505 (1952). Although the plaintiffs herein might suffer considerable financial loss—a

frequent situation in zoning matters—that would not render the zoning ordinances invalid. We said in *Bitts, Inc. v. Seattle*, 86 Wn.2d 395, 544 P.2d 1242 (1976) at 400:

> Economic hardship cannot usually be urged as a reason for the invalidity of an otherwise valid statute or ordinance enacted under the police power. *Wiegardt v. Brennan*, 192 Wash. 529, 73 P.2d 1330 (1937); *State v. Dexter*, 32 Wn.2d 551, 202 P.2d 906, 13 A.L.R.2d 1081 (1949).

■ Second, we shall consider the scope of review of the decision of the Board of Adjustment. The rule is well established that a judicial review of the action of a Board of Adjustment is limited to an inquiry of whether the action of the board is "arbitrary, capricious, or contrary to law." *Reiger v. Seattle*, 57 Wn.2d 651, 359 P.2d 151 (1961); *Household Fin. Corp. v. State*, 40 Wn.2d 451, 244 P.2d 260 (1952); *Durocher v. King County*, 80 Wn.2d 139, 492 P.2d 547 (1972); *Lillions v. Gibbs*, 47 Wn.2d 629, 289 P.2d 203 (1955), *overruled on other grounds* in *Fleming v. Tacoma*, 81 Wn.2d 292, 502 P.2d 327 (1972).

The rule is stated in *L.M. Pike & Son, Inc. v. Waterford*, 130 Vt. 432, 434, 296 A.2d 262 (1972):

> A board of adjustment is only permitted to grant a variance from a zoning ordinance within the guidelines set forth in that zoning ordinance. *Thomson Methodist Church v. Zoning Board of Review*, 99 R.I. 675, 210 A.2d 138, 141 (1965).

The action of the Board of Adjustment herein was in accordance with the ordinance of the City of Medina. The ordinance provides:

> [T]he Board shall not vary any of the rules, regulations, or provisions of the zoning ordinances unless it shall find, after public hearing, that *all of the following conditions* exist in each case of an application for a variance:
> 1. That the land and/or structure in question cannot be reasonably used, and cannot yield a reasonable return, if used only for the purposes permitted and in accordance with other requirements in the land use district in which the land and/or structure is located;
> 2. *That the plight of the owner is due to unique cir-*

*cumstances* which are not the general condition of the neighborhood, and *are not* the result of the owner's action;

3. That the use requested by the applicant, if established, will not be of a general classification differing from the essential·use provisions of the land use district in which the land and/or structure is located.

(Italics ours.) Medina ordinance No. 159 (covering use of land, section 1-21.05).

The present owners of the land, plaintiffs herein, had participated in the sale of the home and the tracts of land which went with the home. They had joined with their mother in the conveyance. The situation in which they found themselves, therefore, was the result of their own action. They had failed, thereby, to meet one of the essential criteria for the granting of a variance. That reason alone is adequate to support the action of the Board of Adjustment.

We will, however, state briefly a number of other reasons which support the action of the board and clearly demonstrate such action was not arbitrary and capricious, nor was it contrary to law.

The plaintiffs can claim no right under the 1952 building permit. It was issued under a mutual mistake of fact. There is no reason to believe the architect, Roland W. Wilson, acted other than in the utmost good faith. He did, however, act under an erroneous understanding of the facts and so did the county engineer's office in issuing the permit. The permit went unused for 20 years. Actually plaintiffs appear not to have relied on the 1952 permit; they applied to the City of Medina for another permit which clearly indicates that they recognized they could not proceed under the old county permit.

The plaintiffs can claim no right under the grandfather clause. The relevant provision contains the words "would have qualified as a building site." The subject property would *not* have qualified under King County standards which required a minimum of 6,000 square feet. The sub-

ject property contained 5,150 square feet, more or less. The subject property never "would have qualified" to gain benefit from the grandfather clause.

We find it wholly unnecessary to discuss set-back requirements and a number of other requirements. Such a discussion would only be cumulative and would needlessly extend the length of this opinion.

We express no opinion on matters not before the court. Herein we deal with an application for a permit to construct a building which would encroach upon the land of another, and which also failed to meet other requirements. An application without the faults of the application considered herein would present new questions upon which we are not now passing.

For the reasons stated, we affirm the majority opinion of the Court of Appeals, reverse the trial court, and reinstate the decision of the Board of Adjustment.

STAFFORD, C.J., and ROSELLINI, HUNTER, HAMILTON, UTTER, BRACHTENBACH, and HOROWITZ, JJ., concur.