[No. 46152.   En Banc.   June 19, 1980.]

SKAGIT COUNTY, ET AL, *Respondents*, v. THE DEPART-
MENT OF ECOLOGY, ET AL, *Appellants*.

*Slade Gorton, Attorney General, Charles B. Roe, Jr., Senior Assistant,* and *Robert E. Mack, Robert V. Jensen,* and *Rochelle E. Wienker, Assistants,* for appellants.

*Patrick R. McMullen, Prosecuting Attorney, C. Thomas Moser, Deputy, Wm. H. Nielsen, Stanley K. Bruhn,* and *Bannister, Bruhn & Cuningham,* for respondents.

WRIGHT, J.—This is a certified appeal by the Attorney General and the Washington Departments of Ecology and Game, and by cross appellants Skagit County and Marine Construction and Dredging, Inc. (MCD), from the Superior Court's affirmance of a Shorelines Hearings Board (board) decision. That decision requires the county to strike development permit provisions allowing the placement of dredge spoil on the southeasterly 7 acres of an 11–acre site, but allowing the deposit of spoil on the remaining northwesterly 4 acres. We reverse that portion of the decision which allows spoil to be placed on part of the site.

MCD is engaged primarily in dredging, pile driving and other water–related work in Skagit County. The company must be located on the shoreline to carry on its activities.

After a thorough search for a suitable location for its offices and water–dependent operations, MCD selected an 11–acre triangular site on the east bank of the Swinomish Channel and approximately 400 feet from Padilla Bay. The bay is a unique and valuable wildlife area of "particular

concern" in the Washington State Coastal Zone Management Program. A suitable location is not available to MCD elsewhere in the county.

On October 5, 1976, MCD received county approval for a substantial development permit. The permit allows MCD to dredge the site's harbor area and to deposit the dredge spoil on the northwesterly 4 acres of the site. The remaining southeasterly 7 acres will become a disposal site for Army Corps of Engineers dredge spoil from Swinomish Channel.

The MCD operation will be low in intensity, with little traffic generation. It will consist of storage space, offices and mooring of small barges and dredging equipment.

The proposed development is an industrial use under the Skagit County Shoreline Management Master Program (master program), which was enacted pursuant to the Shoreline Management Act of 1971 (SMA). RCW 90.58. The master program presently designates the entire site as rural. A rural designation is intended for the protection of prime agricultural land, regulation of development along undeveloped shorelines and to provide a buffer for compatible uses.

The Department of Ecology (DOE) and the Attorney General requested the board to review the permit on the grounds the proposed development violates the SMA, DOE regulations adopted pursuant to the SMA, the master program and the Washington State Coastal Management Program, adopted pursuant to the federal Coastal Zone Management Act of 1972. 16 U.S.C. §§ 1451 *et seq.* (1974). A final order was issued July 20, 1977.

The board's decision found the proposed development inconsistent with: (1) SMA policy, including use preference policies for shorelines of statewide significance (*see* RCW 90.58.020); (2) WAC 173–16–040(6)(ii), 173–16–040(5)(c)(ii), 173–16–050(5), and 173–16–060(14)(a); and (3) various sections of the master program, including sections 11.03 (criteria, conditional use permits) and 7.04.2.B(5) (general regulations for spoil disposal sites).

The board concluded:

> The permit should be remanded to Skagit County to strike all provisions allowing the placement of dredge spoil on the 7–acre upland site, and to add conditions to the permit which would ensure the inclusion and preservation of the 7–acre upland site as a buffer zone to the proposed industrial use allowing its continued function as a wildlife habitat. . . . With these changes, the permit would become consistent with the policy of RCW 90.58-.020, the DOE guidelines, and the master program.

All parties appealed—Skagit County and MCD to Skagit County Superior Court and the DOE to Thurston County Superior Court. The Department of Game (Game) then requested permission to intervene. By agreement of counsel, Game intervened and both cases were consolidated for hearing in Skagit County.

The DOE, Game and the Attorney General contended the board's decision is clearly erroneous and arbitrary and capricious in finding that the site is not located within "natural wetlands" and not finding that all parts of the 11–acre site may not be filled with dredge spoil.

MCD and the county attacked the portions of the board's order and decision which prohibit the placement of dredge spoil on the southeasterly 7 acres of the site, require that area to be used as a buffer zone and find the site is a wildlife habitat. The Superior Court generally upheld the board.

I

State appellants argue the board erred in allowing the placement of dredge spoil on the northwesterly 4 acres of the site. The Superior Court, however, concluded that the issue of dredge spoil site designation had not been properly raised at the board hearing. A review of the record contrarily shows the DOE properly raised the issue.[1] Therefore, it should be considered.

---

[1] Request for Review 8; Hearing Memorandum of Appellants 18, 20; First Day RP 54, 56; Second Day RP 159–60, 168–71; Third Day RP 202 (closing argument).

The board noted that neither the 11–acre site nor the 7–acre portion of it had been designated by the DOE as a dredge spoil disposal location. Nonetheless, it remanded the permit to Skagit County with the instruction to strike only the provisions allowing the placement of dredge spoil on the 7–acre tract. Thus the board indicated dredge spoil may be placed on the northwesterly 4 acres. In contrast, the trial court found the granting of the substantial development permit was designation of a spoil disposal area.

■ A fair reading of the applicable provisions, however, shows that the absence of DOE approval prevents the placement of dredge spoil *anywhere* on the parcel. In *Weyerhaeuser v. King County,* 91 Wn.2d 721, 592 P.2d 1108 (1979), this court observed at page 729:

> The SMA requires each local government to develop a master program for the use and development of shorelines within its boundaries. RCW 90.58.080. The programs, once approved by the Department of Ecology, operate as controlling use regulations for the various shorelines of the state. RCW 90.58.100.

Pursuant to the SMA, the DOE has adopted Skagit County's master program, WAC 173–19–370. It includes the following provisions:

> § 7.04.2.A(3)(2)
> Dredge spoil disposal is permitted in designated spoil disposal areas within the Rural Shoreline Area. *Disposal areas shall be identified by the department until such time they are identified in the Master Program.*

---

The exceptions of the DOE and the Attorney General to the proposed order state at page 15:

> The absence of the requisite approval *applies as well to the three–four acres* as to the seven acres . . . DOE approval . . . has not been given to the 11–acre site or to any part of that site . . . the Board should conclude that the *master program is violated by the placement of fill anywhere on the 11–acre site.* A statement to that effect should be included in the final decision and order.

(Italics ours.)

§ 7.04.2.B(5)
*Dredge spoil disposal shall occur at sites consistent with this Master Program* and the Shoreline Management Act.

(Italics ours.)

Under master program terms, the MCD site is within the "rural shoreline area." Master program § 3.03.111. Accordingly, spoil may be deposited at the site only if so indicated by the department unless the site is identified in the master program. Since no sites have been designated by Skagit County in the master program, DOE designation is necessary. The DOE has not identified any portion of the site for dredge spoil disposal. Therefore, dredge spoil cannot be placed on the site.

The DOE's consent to dredge spoil site designation also is necessary under RCW 90.58.190, which requires DOE approval of master program "adjustments." This provision further undercuts the Superior Court's position that county permit approval amounts to final designation of a dredge spoil disposal area in the master program.

While the county and MCD urge the DOE's argument is defeated by its prior conduct, "it does not follow that merely because the DOE has designated other sites to receive dredge spoil, the DOE is now estopped from deciding not to designate other sites." Reply Brief for Appellants at 12.

The board and the Superior Court erred by sustaining that portion of the MCD permit which allows dredge spoil to be placed on the 4–acre portion of the site.

II

The next issue is: Did the board and the Superior Court err by concluding that the site does not contain natural wetlands? State appellants contend the board's finding that the site does not contain natural wetlands is clearly erroneous. They alternatively argue the board abused its discretion by not taking additional evidence on this question before entry of its final findings, conclusions and order.

As used in the master program, "natural wetlands" means "any shoreline areas that experience water table levels from within two feet to levels above the average surface grade *on a periodic or seasonal basis . . .*" § 3.03.33 (Italics ours.) Dredge spoil disposal on natural wetlands is prohibited by the master program. § 7.04.2.B(6). The program also prohibits most dredging in natural wetland shoreline areas. § 7.04.2.B(3)(a).

In the present case, there is not any testimony stating the water table is within 2 feet of the average surface grade *on a periodic or seasonal basis.* State appellants did not present evidence establishing that water level is a "periodic or seasonal" condition.

> "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

*English Bay Enterprises, Ltd. v. Island County,* 89 Wn.2d 16, 21, 568 P.2d 783 (1977), quoting *Ancheta v. Daly,* 77 Wn.2d 255, 259–60, 461 P.2d 531 (1969). Here the board's finding that the site is not "natural wetlands" is supported by substantial evidence and does not seem incorrect. It is not clearly erroneous.

The argument the board abused its discretion by not taking additional evidence on the natural wetlands question also fails. The pertinent administrative rule reads:

> After the parties have rested or upon review of the record, the board may present such evidence in addition to that contained in the record, *as deemed necessary to decide the matter fairly and equitably.*

(Italics ours.) WAC 461–08–221.

Even assuming that an abuse of discretion could occur when the board denies a *party's request* to reopen the hearing, it could not be found in this case. The affidavit supporting state appellants' untimely motion (made 1 month after the board received the State's exceptions to the proposed findings and order) does not address the question of water table depth on a periodic or seasonal

basis. It merely indicates tests made on a single day showed the water table to be within 2 feet of the land surface.

The board did not abuse its discretion. Its refusal to take additional evidence was not manifestly unreasonable or based upon untenable grounds or reasons. *Marketing Unlimited, Inc. v. Jefferson Chem. Co.,* 90 Wn.2d 410, 412–13, 583 P.2d 630 (1978); *Wilson v. Board of Governors,* 90 Wn.2d 649, 656, 585 P.2d 136 (1978).

### III

■ MCD and Skagit County challenge the board's decision as "arbitrary and capricious" and "clearly erroneous." The definition of "clearly erroneous" already has been given. An agency decision is "arbitrary and capricious," on the other hand, if it is "willful and unreasoning action in disregard of facts and circumstances." *English Bay Enterprises, Ltd. v. Island County, supra* at 21; *Northern Pac. Transp. Co. v. State Utils. & Transp. Comm'n,* 69 Wn.2d 472, 478, 418 P.2d 735 (1966).

■ MCD and the county first contest the board's findings that the southeasterly 7–acre tract is a buffer zone and that its use for dredge spoil constitutes "piecemealing," establishing an undesirable precedent.[2] However, the testimony of Mr. Jeffrey, Mr. Brewer and Mr. Wunderlich supports the determination that the site may be regarded as a

---

[2]MCD and the county challenge board findings of fact Nos. 13, 17 and 18. Finding 13 states the site is presently regarded as a buffer zone to the shores and waters of Padilla Bay. Finding 17 states approval of the entire project could establish a precedent for development on or near Padilla Bay, encouraging nonagricultural uses of adjacent property. This proposed nonagricultural operation in a generally agricultural setting constitutes "piecemealing," finding 17 continues. The finding adds:

Of primary importance is the establishment of a buffer zone around the proposed industrial use in order to prevent industrial encroachment into agricultural areas. This buffer can be provided by leaving the seven acre portion of the property in its present condition. Only in this manner can this project be allowed on the subject shorelines without subjecting the surrounding farmland to the pressures of adjacent industrial uses.

Board finding 18 terms the proposed 11–acre development inconsistent with the master program because the 7–acre spoil disposal site could not protect adjacent agricultural land and has not been designated a spoil disposal area.

buffer protecting the waters and shores of Padilla Bay. MCD and the county argue this low intensity project would not contribute to harmful cumulative development. But Ms. Reed's testimony supports the board's conclusion that removal of the site as a buffer would set a detrimental precedent, resulting in overwhelmingly adverse cumulative impact.

*Hayes v. Yount,* 87 Wn.2d 280, 552 P.2d 1038 (1976) supports the board's position. There we found nothing inconsistent in the board's decision to vacate a permit allowing fill and in its finding the fill would not significantly affect the total estuary. The court observed at page 287: "Logic and common sense suggest that numerous projects, each having no significant effect individually, may well have very significant effects when taken together." The SMA recognizes the necessity for controlling the cumulative detrimental impact of piecemeal development through coordinated planning of all development. RCW 90.58.020.

MCD and the county argue the 7 acres already are irreversibly committed to nonagricultural use because of the parcel's boundaries and poor productivity. The site is not presently utilized for a potentially damaging industrial purpose such as the one proposed, however. The record refutes the assertion that there is no evidentiary basis for the conclusion that use of the 7–acre tract for spoil disposal will not protect adjacent agricultural lands and adjoining shorelines.

The testimony shows the board's adoption of the aforementioned findings was neither clearly erroneous nor arbitrary and capricious. The Superior Court properly upheld the board.

MCD and the county further argue there is not any factual support for the board's finding that the proposed spoil disposal site is a wildlife habitat. Cross–appellants refute their own argument, however, when they state: "The record indicated that at most some 30 nonusual species of birds and/or wildlife may have used the site as a habitat." Brief for Respondents/Cross–Appellants at 23. A reading of the

record shows the site is a valuable wildlife habitat which will be destroyed if dredge spoil disposal is permitted.

We reverse the Superior Court and the board on that portion of the decision which allows spoil on the north-westerly 4 acres. The permit is remanded to the county for modification to disallow the placement of dredge spoil any-where on the 11–acre site (including the 4–acre portion subject to immediate development).

UTTER, C.J., and ROSELLINI, STAFFORD, BRACHTENBACH, HOROWITZ, DOLLIVER, HICKS, and WILLIAMS, JJ., concur.