[No. 6078-1-III.   Division Three.   May 2, 1985.]

JOE SHERWOOD, ET AL, *Appellants,* v. GRANT
COUNTY, ET AL, *Respondents.*

*Harry E. Ries* and *Ries & Kenison,* for appellants.

*F. J. Dullanty, Jr., Claire Cordon,* and *Winston & Cashatt,* for respondents Miller.

McINTURFF, J.—Mr. and Mrs. Sherwood appeal the trial court's affirmance of a decision made by the Grant County Board of Adjustment to issue a variance from the terms of the zoning ordinance to Darrell and Toni Miller. We affirm.

The Millers own real property in Willow Acres zoned S-1 which permits residential buildings and certain agricultural activities, but excludes mobile homes. In 1978, they applied to the Grant County Planning Commission for a rezone of their property to S-2, which allows mobile homes. The Planning Commission recommended against the change; subsequently, the Millers moved a mobile home onto their property. On August 20, 1982, in a separate action (Grant County cause 29041) the Millers were ordered to remove their mobile home. They did not do so and were subsequently held in contempt.

After application to the Board for a variance, the variance was granted and the decision upheld by the Grant County Superior Court. The Board made the following pertinent findings to support its issuance of the variance:

Finding of fact 4: The locale in which the mobile home is situated has at least 131 mobile homes within .3 of a mile.

Finding of fact 5: The home is attractive, well maintained and sits on a permanent foundation.

Finding of fact 6: Neighbors adjacent to the Millers were not opposed to the variance.

Finding of fact 7: Less than 60 feet north of Millers' property is a mobile home park, Cascade Village.

Finding of fact 8: Those in opposition to the variance live in Bertram Plat located on the northern edge of Cascade Village.

Finding of fact 9: Within Willow Acres there are three other mobile homes and four mobile homes on the same street as the Millers.

Section 17 of the Grant County zoning ordinance provides the following:

BOARD OF ADJUSTMENT

The Board of Adjustment, subject to appropriate conditions and safeguards as provided by this Title, shall hear and decide:

(A) VARIANCES:

Applications for variances from the terms of the Zoning Ordinance; provided that any variance granted shall be subject to such conditions as will assure that the adjustment thereby authorized shall not constitute a grant of special privilege inconsistent with the limitations upon other properties in the vicinity and zone in which subject property is situated, and that the following circumstances are found to apply:

1. Because of special circumstances applicable to subject property including size, shape, topography, *location or surroundings,* the strict application of the zoning ordinance is found to deprive subject property of rights and privileges enjoyed by other properties in the vicinity and under identical zone classification.

2. That the granting of the variance will not materially affect adversely the health or safety of persons residing or working in the neighborhood of the proposed use and will not be materially detrimental to the public welfare or injurious to the property or improvements in the vicinity and zone in which subject property is situated.

(Italics ours.) This ordinance is based upon RCW 36.70.810 which contains the same language. The standard of review by the Court of Appeals is whether the action by the Board was arbitrary, capricious or contrary to law. *Lewis v. Medina,* 87 Wn.2d 19, 22, 548 P.2d 1093 (1976); *Martel v. Vancouver,* 35 Wn. App. 250, 666 P.2d 916 (1983); *Murphy v. Seattle,* 32 Wn. App. 386, 389, 647 P.2d 540 (1982). The standard of review must be applied directly to the record of the administrative proceeding. *Murphy,* at 390.

Agency action is "arbitrary and capricious" only if it is "willful and unreasoning action in disregard of facts and circumstances." *Skagit Cy. v. Department of Ecology,* 93 Wn.2d 742, 749, 613 P.2d 115 (1980) (as cited in *United Parcel Serv., Inc. v. Department of Rev.,* 102 Wn.2d 355,

365, 687 P.2d 186 (1984).

Mr. and Mrs. Sherwood argue the action of the Board was contrary to law. However, the cases they cite are based on the type of zoning ordinances interpreted in *Martel v. Vancouver, supra,* and *Douglass v. Spokane,* 25 Wn. App. 823, 829, 609 P.2d 979 (1980), which require, among other things, unnecessary hardship or practical difficulties not the result of the owner's own action. The Grant County ordinance, however, has provisions which make specific reference to special circumstances affecting the property including location or surroundings and the fact the subject property is being deprived of rights and privileges enjoyed by other properties in the vicinity and under the same zoning classification.

The Sherwoods cite *Ling v. Whatcom Cy. Bd. of Adj.,* 21 Wn. App. 497, 585 P.2d 815 (1978), which denied a variance to construct a multi–family residence on property zoned S–2, which allowed only single family residences. The Board found there were no special circumstances which justified the issuance of the variance that did not apply generally to the other property in the same zone. The court stated at page 500:

> If Ling's application for a variance were to be granted, it would appear that the Board would have no basis for denying subsequent variance applications by other owners. The single–family zoning benefits enjoyed by the area would be effectively lost.

The same concern was evident in the minutes of the Grant County Board of Adjustment, specifically the effect the issuance of the variance would have on other properties in the area as they related to maintaining the integrity of the zoning plan. However, the minutes reflect the variance was issued for this single parcel because of its particular location on Ottmar Road. Thus, the "domino effect" on other parcels of property in this zone would be minimal, if not nugatory. *Ling* is not dispositive of this particular factual situation.

In reviewing the evidence we must determine if

there are special circumstances applicable to the subject property which effectively deprive the Millers of a privilege granted to other property owners in that zone and if the variance were granted, whether the variance would be injurious to the interest of the public welfare.

The special circumstances applicable to the subject property include its location within 60 feet of a mobile home park and the fact it is surrounded by 131 other mobile homes within .3 of a mile, including 3 within Willow Acres and 4 on the same street as the Millers. At least 2 of those mobile homes are located in the same S–1 zone as the Millers; the Latting mobile home because of a variance and the Bohnes, who were grandfathered in. There is also an uncontroverted affidavit from a local realtor which concludes financing would not be available for the construction of a home on the site. Testimony of neighbors shows a high degree of approval of the variance and the fact the home was attractive and well maintained.

Mr. and Mrs. Sherwood also argue the Millers should be denied the variance because the hardship they suffered was self–imposed. However, our affirmance is based upon grounds other than hardship, particularly the characteristics of the location and surroundings of the property, as it exists, with or without the presence of the mobile home. Their illegal act had been previously dealt with in a separate action. The variance will allow the Millers the same privilege with respect to the use of the property as that granted to their neighbors. We hold the action taken by the Board was not arbitrary, capricious, or contrary to law, but was in compliance with the Grant County zoning ordinance.

The second issue raised by Mr. and Mrs. Sherwood is whether there is substantial evidence to support the Board's findings of fact.

We note no error assigned to any findings of fact nor to any conclusion of law except in the body of Mr. Sherwood's brief. Despite this failure to comply with RAP 10.3(g) we cite the following rule from *Ling,* at 499–500:

Ling's final contention is that the denial of his variance application is not supported by substantial evidence in the record as a matter of law. The contention is without merit. The "substantial evidence" standard of review is inapplicable. As stated in *Lewis v. Medina, supra* at 22,

[t]he rule is well established that a judicial review of the action of a Board of Adjustment is limited to an inquiry of whether the action of the board is "arbitrary, capricious, or contrary to law."

As stated by the respondents:

Where there is room for two opinions, action is not arbitrary or capricious when exercised honestly and upon due consideration, even though it may be believed that an erroneous conclusion has been reached.

*Washington Ass'n for Retarded Citizens v. Spokane,* 16 Wn. App. 103, 111, 553 P.2d 450 (1976) (citing *Lillions v. Gibbs,* 47 Wn.2d 629, 633, 289 P.2d 203 (1955)).

The judgment of the Superior Court is affirmed.

GREEN, C.J., concurs.

THOMPSON, J. (dissenting)—A review of the factual and legal history of this case would lead a person of normal compassion to conclude the majority's approach to laying this matter to rest is the most merciful and humane for all concerned. However, I am compelled to dissent since logic and precedent persuade me that the decision is not correct. As is argued by Mr. and Mrs. Sherwood, allowing the variance grants a special privilege to the Millers.

As the majority correctly states, judicial review of the action of a board of adjustment is limited to an inquiry of whether the action of the board is "'arbitrary, capricious, or contrary to law.'" *Lewis v. Medina,* 87 Wn.2d 19, 22, 548 P.2d 1093 (1976). Such conduct is defined to be without consideration and in disregard of the facts. *Anderson v. Island Cy.,* 81 Wn.2d 312, 317, 501 P.2d 594 (1972) (quoting *State ex rel. Myhre v. Spokane,* 70 Wn.2d 207, 210, 422 P.2d 790 (1967)). Moreover, the opponents of the variance have the burden of proof. *Grant Cy. v. Bohne,* 89 Wn.2d

953, 957, 577 P.2d 138 (1978); *Messer v. Snohomish Cy. Bd. of Adj.*, 19 Wn. App. 780, 578 P.2d 50 (1978).

Reducing the findings of the Board of Adjustment to their simplest form indicates that the variance was allowed because neighbors favor it; the mobile home is neat, well built and on a permanent foundation; there are many other mobile homes in the same area; and petitioner will be put to a great deal of unwarranted expense and inconvenience if the mobile home must be moved. In its conclusions, the Board observed the hardship petitioners sought to alleviate was not self–induced; the petitioners would be deprived of property rights enjoyed by other parties if the variance were denied; and not only will the variance not adversely affect the health or safety of other persons residing in the neighborhood, but in fact granting the variance will serve the entire community. The record also reflects the Board's belief that an S–2 zone classification would be more appropriate in that area and that the Millers' mobile home, though not a stick home, is probably comparable to one.

A board of adjustment is permitted to grant a variance from a zoning ordinance only within the guidelines set forth in that zoning ordinance. *Orion Corp. v. State,* 103 Wn.2d 441, 458–59, 693 P.2d 1369 (1985); *Lewis,* at 22 (quoting *L.M. Pike & Son, Inc. v. Waterford,* 130 Vt. 432, 434, 296 A.2d 262 (1972)).

> A variance should be granted only where the property owner can show that the application of the zoning ordinance to his property creates a hardship therein not imposed upon other properties in the same vicinity and that the variance is necessary to remove that hardship.

2 Washington State Bar Ass'n, *Real Property Deskbook* § 62.27, at 62–30 (1979). Moreover:

> Unfortunately, some municipalities have commonly used the variance to create unwarranted exceptions and to allow uses not otherwise permitted by the zoning district. When this happens it actually amounts to an unlawful amendment of the ordinance and defeats the legitimate purposes of zoning itself.

2 *Real Property Deskbook*, at 62–30.

Section 17 of the Grant County zoning ordinance provides for variances:

(A) VARIANCES:

Applications for variances from the terms of the Zoning Ordinance; provided that any variance granted shall be subject to such conditions as will assure that the adjustment thereby authorized *shall not constitute a grant of special privilege inconsistent with the limitations upon other properties in the vicinity and zone in which subject property is situated,* and that the following circumstances are found to apply:

1. Because of special circumstances applicable to subject property including size, shape, topography, location or surroundings, the strict application of the zoning ordinance is found to deprive subject property of rights and privileges enjoyed by *other properties in the vicinity and under identical zone classification.*

2. That the granting of the variance will not materially affect adversely the health or safety of persons residing or working in the neighborhood of the proposed use and will not be materially detrimental to the public welfare or injurious to the property or improvements in the vicinity and zone in which subject property is situated.

(Italics mine.)

The majority, at page 499, noting the absence of language in the ordinance referring to "unnecessary hardship or practical difficulties not the result of the owner's own action", looks to California law to interpret the meaning of the ordinance at issue. However, as explained in *Martel v. Vancouver,* 35 Wn. App. 250, 254–55, 666 P.2d 916 (1983), proof of the substantive enumerated factors in the ordinance "inherently" shows unnecessary hardship or practical difficulties.[1]

A review of the record indicates perhaps the most per-

---

[1]The ordinance in *Martel* did, however, contain an introductory provision containing "hardship" language which the court found merely prefatory.

suasive factor relied on by the Board of Adjustment in granting the variance was the presence of numerous other mobile homes in the vicinity. It was error for the Board to rely on this fact. The other mobile homes located in the area, with one or two exceptions, are there either as preexisting, nonconforming uses or in violation of the zoning ordinance. In looking at special circumstances applicable to a piece of property or in determining that the subject property is deprived of enjoyment of the same privileges accorded to other property in the vicinity under identical zoning classification, the Board must make its comparison to similarly situated property and not property already enjoying a special privilege. Nonconforming uses are not favored in the law and it is only to avoid injustices that zoning laws accept them. *Andrew v. King Cy.,* 21 Wn. App. 566, 586 P.2d 509 (1978). Allowing a variance because the zoning ordinance is found to deprive subject property of rights and privileges enjoyed by other properties in the vicinity when those other properties in the vicinity are using their property illegally or as nonconforming users will in effect destroy responsible zoning plans. As long as one nonconforming use exists in a zoned area, every other property owner can complain that he is deprived of the enjoyment of his property afforded other property owners in the same zone classification. To allow variances based on a comparison to illegal or nonconforming uses frustrates the general purpose of zoning to stabilize uses, conserve property values, preserve neighborhood character, and provide orderly growth and development. *Duckworth v. Bonney Lk.,* 91 Wn.2d 19, 586 P.2d 860 (1978).

Not only was it error for the Board to regard nonconforming, preexisting or illegal uses as the norm when it is obviously the exception, but in fact the Board probably conferred an even greater benefit on the Millers than other mobile homeowners in the area enjoy. Nonconforming uses are subject to restrictions such as a limitation on expansion or change and findings that they have been abandoned if not continuously in use. *State ex rel. Smilanich v. McCol-*

*lum,* 62 Wn.2d 602, 384 P.2d 358 (1963); *King Cy. v. High,* 36 Wn.2d 580, 219 P.2d 118, 18 A.L.R.2d 722 (1950); *Shields v. Spokane Sch. Dist. 81,* 31 Wn.2d 247, 196 P.2d 352 (1948). Since this Board of Adjustment has granted the Millers a variance without reservation or restrictions, a greater benefit has been conferred upon them than is enjoyed by other mobile homeowners in the area.

The record does establish the likelihood that the area may be improperly zoned and may be more suited to an S–2 classification. Also, it is noted the Millers attempted to have the area rezoned but were unsuccessful. Neither of these two facts, however, will justify the Board's usurping the legislative function of the Board of County Commissioners by inferentially amending the ordinance in granting the variance. Variances may be lawfully granted only within the guidelines set forth in the zoning ordinance. *Grant Cy. v. Bohne, supra.* There is nothing contained in the Grant County ordinance that allows the Board of Adjustment to base the granting of a variance upon their conclusion either that the area is miszoned or that the Board of County Commissioners is wrong in refusing to rezone. The legislative power to adopt or amend zoning classifications rests with the County Commissioners. *Evergreen State Builders, Inc. v. Pierce Cy.,* 9 Wn. App. 973, 516 P.2d 775 (1973).

None of the other factors considered by the Board in granting the variance support its decision. The fact neighbors do not object or even encourage the variance is not a reason to either grant or deny it. It may be a tribute to the Millers' ability to get along with their neighbors, but is not a controlling factor in granting the variance. The fact the mobile home is neat, well built, and on a permanent foundation is not a basis for granting a variance, any more than the fact an applicant promises to put up a neat, well built, new department store warrants a variance in a residential area. And finally, although the mobile home may be comparable to a stick home, it nonetheless is still a mobile home and thus prohibited in an S–1 zone.

It is difficult to find support in the record for the Board's

conclusion that the Millers' predicament is not self–imposed. The Millers argue, having been found in contempt of court, they have already paid a substantial price for placing the mobile home on their property. Although that would appear to be true, self–help rezoning such as has been effectuated by the Millers in this case should not be condoned. When a person flaunts the law with eyes wide open to the possible consequences, the penalty that may be visited upon that person is the result of his refusal to recognize the law. That lawlessness should not be rewarded with success. Although the Millers may have paid a price for ignoring the law, it flies in the face of reason to consider their lawlessness as a down payment toward the allowance of a variance.

Contrary to the Board's finding, the record indicates granting the variance conferred a special privilege upon the Millers inconsistent with limitations in the vicinity. No other property in the identically zoned area enjoys the benefit this variance confers upon the Millers. The granted variance is not supported by the facts and is thus arbitrary, capricious and contrary to the law. *Anderson v. Seattle,* 64 Wn.2d 198, 390 P.2d 994 (1964); *Pierce v. King Cy.,* 62 Wn.2d 324, 382 P.2d 628 (1963). I dissent.