[No. 61039-8.    En Banc.    November 10, 1994.]

RICHARD F. BUECHEL, *Petitioner*, v. THE DEPARTMENT
OF ECOLOGY, *Respondent*.

*Robert W. Johnson* and *Heuston, Settle & Johnson,* for petitioner.

*Christine O. Gregoire, Attorney General,* and *Ronald L. Lavigne, Assistant,* for respondent.

*Jeanette R. Burrage* on behalf of Northwest Legal Foundation, amicus curiae for petitioner.

*John M. Groen, Ronald A. Zumbrun, Robin L. Rivett,* and *James S. Burling* on behalf of Pacific Legal Foundation, amicus curiae for petitioner.

*Ralph W. Johnson* on behalf of Center for Environmental Law and Policy, amicus curiae for respondent.

ANDERSEN, C.J. —

## FACTS OF CASE

This case involves review of a Shorelines Hearings Board decision denying a landowner's application for a variance to allow the building of a residence on Hood Canal.

In 1983, Richard Buechel (hereafter the landowner) purchased a narrow waterfront lot which lies between the Hood Canal shoreline and State Highway 106. The property had an "urban residential" zoning classification which requires a minimum 10,000-square-foot lot in order to build a structure on a shoreline and requires the structure to be set back at least 15 feet from the line of ordinary high water.[1] The land-

[1]Mason County Shoreline Master Program § 7.20.010.

owner testified that he did not purchase the lot contingent on obtaining a variance from the regulations which prohibited building a residence on the lot.

The entire lot is approximately 8,500 square feet, but most of it is underwater. A small 3-sided cement bulkhead had been built on the lot 30 to 40 years ago. James Hartley, a reviewer of shoreline permits for the shoreline management section of the Department of Ecology, inspected the lot and gave unrefuted testimony that a good portion of the fill (landward of the bulkhead) had been removed by wave action and that based on the flotsam from the tide, it appeared that about one-half to one-third of the existing bulkhead had been covered by water during the previous high tide. Hartley's report indicates the bulkhead was old and in disrepair. The landowner agreed most of the lot was underwater and testified that only the area of the fill within the bulkhead, about 40 by 21 feet, was "buildable". The "buildable" lot area was less than 1,000 square feet.

In August 1984, the landowner applied for a substantial development permit and a variance to allow building on the property. The proposed development was a 2-story residence with no setback from the bulkhead.[2] The allegedly "buildable" area of the lot is 40 by 21 feet and the proposed building is 35 by 20 feet.

In September 1984, the Mason County Shoreline Advisory Board approved the landowner's application for the variance and the Mason County commissioners granted the variance application. However, any variance from an approved shoreline master program which is granted by a local government must be approved by the Department of Ecology (hereafter Department) before it is effective.[3] In December 1984, the Department denied the variance. The landowner appealed

---

[2]The landowner testified that subsequent to the application for the building permit and variance, he had discussed with the Department of Ecology that he would consider a setback of 5 feet from the bulkhead. However, in his application for a permit and variance there was no setback from the line of ordinary high tide.

[3]RCW 90.58.140(12).

the Department's decision to the Shorelines Hearings Board (Board).

The Board found that the landowner wished to build a 20-by 35-foot 2-story home on a 1,000-square-foot lot in an area designated as urban residential. The Board found that the landowner was requesting to build waterward of the 15-foot setback on an undersized lot on a shoreline which was designated by the Shoreline Management Act of 1971 (SMA) as a shoreline of statewide significance. With regard to surrounding land uses, the Board found that some lots in the area are developed with permanent and vacation residences, that a residence is constructed on the adjacent lot to the west, that the landowner owns a permanent home across the road and a short distance from his beachfront property, and that nearby waterfront parcels are used for recreational purposes, involving docks, floats, decks or boathouses, but without homes on the properties. The Board identified the issue before it as whether the proposed construction was consistent with the SMA and the Mason County Shoreline Master Program (MCSMP), particularly the variance criteria. The Board concluded the threshold requirement for a variance under the MCSMP had not been met and affirmed the Department's denial of the variance.

The landowner appealed the Board's decision to the Mason County Superior Court which reversed the Board's decision on the grounds that it was "erroneous and arbitrary and capricious" and remanded for issuance of a variance and building permit.

On appeal to the Court of Appeals, that court articulated the standard of review and concluded that given the close nature of the case it could not say that a decision for either party would have been erroneous, much less "clearly erroneous" and therefore reversed the Superior Court and reinstated the Board's decision denying the variance.

In the landowner's Petition to this court, he argues that the Board's decision was clearly erroneous or arbitrary or capricious.

One issue is before this court.[4]

## ISSUE

Was the action of the Shorelines Hearings Board clearly erroneous in denying a variance to allow the construction of a building that would have violated the minimum setback and the minimum lot size requirements of the Mason County Shoreline Master Program, or, was the Board's decision arbitrary or capricious?

## DECISION

CONCLUSION. The Shorelines Hearings Board was not clearly erroneous in denying a variance to allow the construction of a building that would have violated the minimum setback and the minimum lot size requirements of the Mason County Shoreline Master Program. The Board's decision was neither arbitrary nor capricious.

### Standard of Review

■ ■ The administrative procedure act (former RCW 34.04.130)[5] governs judicial review of the Shorelines Hearings Board decision in this case.[6] The parties agree that the standard of review of the Board decision here is whether the decision is clearly erroneous in view of the entire record and

---

[4]While we appreciate the amicus briefing submitted in this case, we conclude that there are no constitutional issues presently before this court. No inverse condemnation ("takings") claim was ever raised in this case; the Shorelines Hearings Board, the Superior Court, and the Court of Appeals never addressed such an issue. Generally, an issue not raised in a contested case before the Shorelines Hearings Board may not be raised for the first time on review of the Board's decision. *Kitsap Cy. v. Department of Natural Resources*, 99 Wn.2d 386, 393, 662 P.2d 381 (1983); 4 Washington State Bar Ass'n, *Real Property Deskbook* § 84.65, at SU-84-5 (2d ed. 1986 & Supp. 1989). *See also R/L Assocs., Inc. v. Seattle*, 113 Wn.2d 402, 412, 780 P.2d 838 (1989); *Robinson v. Peterson*, 87 Wn.2d 665, 675, 555 P.2d 1348 (1976). After a complete review of the record and the briefing in this case, we conclude that it would be impossible to address a constitutional takings issue for the first time at this stage because none of the factual determinations have been made to allow this court to engage in the analysis required by our recent case law.

[5]Because these agency proceedings commenced prior to July 1, 1989, the former administrative procedure act, RCW 34.04, applies to this review. RCW 34.05.902.

[6]RCW 90.58.180(3).

the public policy contained in the Shoreline Management Act of 1971, RCW 90.58, or whether the decision was arbitrary or capricious.[7] Under the clearly erroneous standard, the Board's decision may only be reversed when the reviewing court is definitely and firmly convinced that a mistake has been made in light of the policies of the SMA and the reviewing court may not substitute its judgment for that of the Board.[8] A board's decision is arbitrary or capricious if it is "willful and unreasoning action in disregard of facts and circumstances."[9] Where there is room for two opinions, action is not arbitrary and capricious when exercised honestly and upon due consideration though it may be felt that a different conclusion might have been reached.[10]

▮▮▮ The landowner here contends that the Board had a duty to defer to the local decisionmakers. We disagree. Contrary to the landowner's argument regarding shoreline appeals, the Board hears the matter de novo[11] and the Board's de novo review accords the local government's decision no particular deference.[12] Appellate review is of the Board's decision, not the decision of the local government or the superior court, and judicial review of the Board's decision is based on the record made before the Board.[13] In the

[7]Former RCW 34.04.130(6)(e), (f); e.g., Hayes v. Yount, 87 Wn.2d 280, 286, 552 P.2d 1038 (1976).

[8]Hayes, 87 Wn.2d at 286; Skagit Cy. v. Department of Ecology, 93 Wn.2d 742, 748, 613 P.2d 115 (1980).

[9]Skagit, 93 Wn.2d at 749 (quoting English Bay Enters., Ltd. v. Island Cy., 89 Wn.2d 16, 21, 568 P.2d 783 (1977)).

[10]Barrie v. Kitsap Cy., 93 Wn.2d 843, 850, 613 P.2d 1148 (1980); Sherwood v. Grant Cy., 40 Wn. App. 496, 501, 699 P.2d 243 (1985).

[11]Kitsap Cy. v. Department of Natural Resources, 99 Wn.2d 386, 392, 662 P.2d 381 (1983) (citing WAC 461-08-174).

[12]William H. Chapman, Substantive Decision-Making Under the Washington Shoreline Management Act, 9 U. Puget Sound L. Rev. 337, 377 (1986).

[13]4 Real Property Deskbook, at 84-45; San Juan Cy. v. Department of Natural Resources, 28 Wn. App. 796, 799, 626 P.2d 995 (1981); Department of Ecology v. Ballard Elks Lodge 827, 84 Wn.2d 551, 555, 527 P.2d 1121 (1974); Franklin Cy. Sheriff's Office v. Sellers, 97 Wn.2d 317, 323-24, 646 P.2d 113 (1982), cert. denied, 459 U.S. 1106 (1983).

course of judicial review, due deference will be given to the specialized knowledge and expertise of the Board.[14]

## Criteria for Variances Under the SMA

■ All development on the shorelines of this state undertaken after June 1, 1971, must conform to the SMA.[15] The SMA is to be broadly construed in order to protect the state shorelines as fully as possible.[16] The policy of the SMA was based upon the recognition that shorelines are fragile and that the increasing pressure of additional uses being placed on them necessitated increased coordination in their management and development. The SMA provides that it is the policy of the State to provide for the management of the shorelines by planning for and fostering all "reasonable and appropriate uses".[17] This policy contemplates protecting against adverse effects to the public health, the land and its vegetation and wildlife, and the waters of the state and their aquatic life, while protecting generally the public right of navigation and corollary rights incidental thereto.[18]

The SMA requires a combination of state and local planning. The SMA requires all local governments to develop regulations ("shoreline master programs") to plan for the reasonable uses of the shorelines.[19] Local regulations must be approved and adopted by the Department.[20] The total of all approved shoreline management master programs consti-

---

[14]*Weyerhaeuser Co. v. King Cy.*, 91 Wn.2d 721, 736, 592 P.2d 1108 (1979); *English Bay Enters., Ltd. v. Island Cy.*, 89 Wn.2d 16, 21, 568 P.2d 783 (1977); *Hayes*, 87 Wn.2d at 289; 4 *Real Property Deskbook*, at 84-45; *Hama Hama Co. v. Shorelines Hearings Bd.*, 85 Wn.2d 441, 448-49, 536 P.2d 157 (1975); Chapman, 9 U. Puget Sound L. Rev. at 351-52.

[15]RCW 90.58.140(1), (2); *Hayes*, 87 Wn.2d at 288.

[16]*English Bay*, 89 Wn.2d at 20; *see* RCW 90.58.900.

[17]RCW 90.58.020.

[18]RCW 90.58.020; *Caminiti v. Boyle*, 107 Wn.2d 662, 732 P.2d 989 (1987).

[19]RCW 90.58.070, .080.

[20]RCW 90.58.090.

tute Washington State's Shoreline Management Master Program.[21]

The Department has approved the Mason County Shoreline Master Program and adopted it as a state regulation.[22] The area of the shoreline involved in this case, Hood Canal, has been designated by the SMA as a shoreline of statewide significance.[23]

The SMA applies to uplands lying within 200 feet inland from the high water mark.[24] Generally, a landowner who wishes to develop property within the shorelines must obtain a permit from the local government.[25] A permit for a substantial development shall only be granted when the development is consistent with the applicable master program and the provisions of the SMA.[26] Any permit for a variance granted by a local government under an approved master program must be submitted to the Department for its approval or disapproval.[27] Appeal from the denial of a permit is then to the Board.[28] The Board is a quasi-judicial administrative body with specialized skills in hearing shoreline cases.[29] The Board includes three members of the Pollution Control Hearings Board, one member appointed by the Association of Washington Cities, one by the Association of

[21]*See generally* Ralph W. Johnson et al., *The Public Trust Doctrine and Coastal Zone Management in Washington State*, 67 Wash. L. Rev. 521, 578 (1992).

[22]WAC 173-19-310.

[23]RCW 90.58.030(2)(e)(ii)(C); shorelines of statewide significance is a category of shorelines which was determined to be of sufficient importance to give the State more substantial planning authority than it was given for other shorelines. 4 *Real Property Deskbook*, at 84-57.

[24]RCW 90.58.030(2)(f).

[25]RCW 90.58.140.

[26]RCW 90.58.140; *Nisqually Delta Ass'n v. DuPont*, 103 Wn.2d 720, 724, 696 P.2d 1222 (1985).

[27]RCW 90.58.140(12); WAC 173-14-130.

[28]RCW 90.58.180.

[29]*Kitsap Cy. v. Department of Natural Resources*, 99 Wn.2d 386, 392, 662 P.2d 381 (1983).

County Commissioners, and the Commissioner of Public Lands or his designee.[30]

■ Applicants for permits have the burden of proving that a proposed substantial development is consistent with the criteria that must be met before a permit is granted, and in any review of the granting or denial of an application for a permit as provided in RCW 90.58.180(1) and (2), the person requesting the review has the burden of proof.[31] Therefore, in this case, this burden of proof was on the landowner in the original application and also in the review of the denial.[32]

■ Any variance from an approved master program "shall be allowed only if extraordinary circumstances are shown and the public interest suffers no substantial detrimental effect". RCW 90.58.100(5). A variance permit may be lawfully granted only within the guidelines set forth in the zoning ordinance.[33]

The Department guidelines to obtain a variance from a shorelines master program are set out in WAC 173-14-150 which provides in relevant part:

> The purpose of a variance permit is strictly limited to granting relief from specific bulk, dimensional or performance standards set forth in the applicable master program where there are extraordinary or unique circumstances relating to the property such that the strict implementation of the master program will impose unnecessary hardships on the applicant or thwart the policies set forth in RCW 90.58.020.
>
> . . . In all instances extraordinary circumstances should be shown and the public interest shall suffer no substantial detrimental effect.
>
> (2) Variance permits for development that will be located landward of the ordinary high water mark . . . may be authorized provided the applicant can demonstrate all of the following:
>
> (a) *That the strict application of the bulk, dimensional or performance standards set forth in the applicable master pro-*

---

[30]RCW 90.58.170.

[31]RCW 90.58.140(7).

[32]4 Washington State Bar Ass'n, *Real Property Deskbook* § 84.60, at 84-45 (2d ed. 1986 & Supp. 1989).

[33]*Orion Corp. v. State*, 103 Wn.2d 441, 458-59, 693 P.2d 1369 (1987); *Lewis v. Medina*, 87 Wn.2d 19, 22, 548 P.2d 1093 (1976).

*gram precludes or significantly interferes with a reasonable use of the property not otherwise prohibited by the master program.*

(Italics ours.)

However, WAC 173-14-155 provides in pertinent part:

the criteria contained in WAC . . . 173-14-150 for . . . variance permits shall constitute the minimum criteria for review of these permits by local government and the department [of Ecology]. *Local government and the department may, in addition, apply the more restrictive criteria where it exists in approved and adopted master programs.*

(Italics ours.)

In 1984, at the time of the landowner's application for a variance, Mason County did have a variance ordinance which differed from WAC 173-14-150. The former Mason County variance ordinance provided:

Variances deal with specific requirements of this ordinance and the objective is to grant relief when there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of this ordinance. *The property owner must show that if he complies with the provisions, he cannot make any reasonable use of his property. The fact that he might make a greater profit by using his property in a manner contrary to the intent of this ordinance is not a sufficient reason for a variance.* A variance will be granted only after the applicant can demonstrate the following:
. . .[34]

Former MCSMP § 7.28.020.

Thus, at the time the landowner applied for a variance, Mason County had a stricter requirement to obtain a variance than did the State. The county ordinance required the owner to show that if he complied with the provisions, he could not make *any* reasonable use of the property while WAC 173-14-150 required that strict application of the standards *precludes or interferes with a reasonable use* of the property.[35] The Board used the Mason County variance ordi-

---

[34]Since the Board found the landowner failed to show that the restrictions deprived him of any reasonable use of his property, the Board did not consider the rest of the list of criteria in the county variance ordinance.

[35]Some time after the landowner applied for his variance, Mason County amended its variance ordinance to mirror the more lenient state requirement. However, with regard to this appeal, the landowner's rights vest at the time of

nance rather than the variance rule contained in WAC 173-
-14-150. Because the local rule was more restrictive, the
Board was correct to use the local ordinance.[36]

The State contends that both the following questions are
before this court:

1. Was the proposed development a reasonable use of the
property?

2. Was there any reasonable use for the property if used in
conformity with the Shoreline Master Program?

Because of the way the Board resolved this case, only the
second question is before this court. The State argued to the
Board that the construction of a 2-story house on a lot less
than 10 percent of the minimum size requirement, with no
setback from a deteriorating bulkhead, is an unreasonable
use of the property,[37] and that it is unreasonable to build a
residence up to the bulkhead when high tides frequently
overtop the bulkhead and cause erosion of the fill upon
which the house would be built. However, the Board failed
to make a factual determination on this issue, finding it un-
necessary to decide the question whether the proposed devel-
opment is itself "a reasonable use". The Board merely
concluded as follows:

---

application. *Talbot v. Gray*, 11 Wn. App. 807, 811, 525 P.2d 801 (1974), *review denied*,
85 Wn.2d 1001 (1975); *see also* 4 *Real Property Deskbook* § 84.29, at 84-24. The law
in effect at the time of the landowner's application was former MCSMP § 7.28.020
and, therefore, all review in this case is based upon the application of that law.
Ecology acknowledges in its briefing that the landowner could withdraw his applica-
tion and submit a new application which would vest under the new version of the
Mason County variance ordinance. The newer version of the Mason County vari-
ance ordinance would still require the landowner-applicant to show that construc-
tion of a residence on this very small lot is a "reasonable use" of the property. As
noted, that factual question was not decided by the Board and is not before this
court.

[36]WAC 173-14-155.

[37]The State now argues that the fact that the (approved) septic tank which was
to be installed on the lot violates the regulations which require that septic tanks be
a certain number of feet from any surface water also makes a house on this lot an
unreasonable use. However, a variance for the septic tank has been granted and its
approval involves a wholly different permitting process; the Board simply noted in
its findings that the landowner has approval for a septic system.

Given the extremely small buildable area on this lot, substantially confined to fill on a shoreline of statewide significance, it is *questionable* that the construction of a two-story dwelling is itself a reasonable use of the property under the policy of the SMA, absent the setback and lot size restrictions of the master program.

(Italics ours.) Clerk's Papers vol. 2, at 30-31.

Instead, the Board's decision is based upon the then-existing threshold requirement for a variance under the former Mason County ordinance, that is, if the owner conforms to the regulations, whether he has any reasonable use of his property.

Therefore, the question before this court is whether the Board was "clearly erroneous" or acted in an "arbitrary or capricious" manner when it concluded that the landowner did not prove that he had been deprived of any reasonable use of his property. The Board concluded that

clearly these restrictions do not deprive appellant of *any* reasonable use of his property. Recreational use of small shoreline parcels without the presence of homes is being made on Hood Canal in the vicinity of appellant's lot. Such use is available to appellant, and this situation, we conclude prevents him from meeting the threshold requirement for a variance under the MCSMP [Mason County Shoreline Master Program].

Clerk's Papers vol. 2, at 31. This conclusion is supported by the Board's finding:

Nearby waterfront parcels are used for recreational purposes, involving docks, floats, decks or boat houses, but without homes on the properties.

Clerk's Papers vol. 2, at 27. This finding is supported by the record before the Board. In fact, the landowner testified that a residence would be more aesthetically pleasing to him than a trailer site for a mobile home or a recreational vehicle park or a boat shed. The landowner made no showing that he had no reasonable use of the property if he complied with the existing land use regulations.

We cannot conclude on this record that the Board's decision that the landowner had some reasonable uses for this particular piece of property when used in conformity

with the building regulations is clearly erroneous. The Board's finding that water dependent recreational uses do constitute a reasonable use of this small sliver of property finds support in this record and in case law which holds that land may have some economic value where the uses allowed are recreational.[38] The size, location, and physical attributes of a piece of property are relevant when deciding what is a reasonable use of a particular parcel of land.

The landowner argues that recreational use is unreasonable because residential use must be given priority under the SMA. This is inaccurate. The landowner relies on the SMA which states that "[a]lterations of the natural condition of the shorelines of the state, *in those limited instances when authorized*, shall be given priority for single family residences and . . . ports, shoreline recreational uses". (Italics ours.) RCW 90.58.020(7) (part). However, in this case the residential use was not "authorized"; in fact, it was prohibited by the regulations in existence at the time the landowner made his application for a variance and at the time he had purchased this property.

◼ To some extent the reasonable use of property depends on the expectations of the landowner at the time of purchase of the property. If existing land regulations limit the permissible uses of the property at the time of acquisition, a purchaser usually cannot reasonably expect to use the land for prohibited purposes.[39] Although not necessarily determina-

---

[38]*See Hall v. Board of Envtl. Protec.*, 528 A.2d 453 (Me. 1987); *Namon v. Florida*, 558 So. 2d 504 (Fla. Dist. Ct. App.), *review denied*, 564 So. 2d 1086 (Fla. 1990); *Turnpike Realty Co. v. Dedham*, 362 Mass. 221, 284 N.E.2d 891 (1972), *cert. denied*, 409 U.S. 1108 (1973); *Turner v. Del Norte*, 24 Cal. App. 3d 311, 101 Cal. Rptr. 93 (1972).

[39]3 Robert M. Anderson, *Zoning* § 20.58, at 559 (3d ed. 1986) (a person who purchases land with knowledge of zoning restrictions is not usually qualified to receive an area variance which relieves him of such restrictions); *Goslin v. Zoning Bd. of Appeals*, 40 Ill. App. 3d 40, 351 N.E.2d 299 (1976) (when one has purchased a lot with knowledge of restrictive zoning concerning area footage, any hardship was self-induced and a zoning board is not required to issue a variance; a purchaser does not have a right to develop a substandard lot); *Four M Constr. Corp. v. Fritts*, 151 A.D.2d 938, 543 N.Y.S.2d 213 (1989) (a variance is not denied solely on the ground of self-created hardship, but that factor may be given weight); *C&W Homes, Inc. v. Livonia Zoning Bd. of Appeals*, 25 Mich. App. 272, 181

tive, courts may look to the zoning regulations in effect at the time of purchase as a factor to determine what is reasonable use of the land. Presumably regulations on use are reflected in the price a purchaser pays for a piece of property. This landowner knew when he purchased this lot that it did not satisfy either the minimum lot size or the setback requirements of the MCSMP.

Reasonable setback requirements are an accepted land use tool and all property tends to benefit from their enforcement.[40] In the granting of all variance permits in shorelines cases, consideration shall be given to the cumulative impact of additional requests for like actions in the area.[41] The Board may consider the cumulative environmental impact of development.[42] Therefore, it is reasonable for the Board to consider what the cumulative effects would be of allowing structures to be built on the shoreline with no setback from the high water line.

The landowner also asserts that the Board's decision was arbitrary and capricious because, in 1980, a neighbor had been allowed to build a small home on an adjacent bulkheaded piece of property. The Board stated that the earlier approval by Mason County and the Department of the variance for the neighbor's property was not appealed to the Board, nor adjudicated by it under the standards of the Master Program. The Board concluded that past inconsistent administration never brought to the Board for review

N.W.2d 286 (1970) (when an owner has full knowledge of a lot's nonconforming dimension, evidence supported denial of a permit to build a home on an undersized lot); *Turner v. Del Norte, supra*; 5 Norman Williams, Jr. & John M. Taylor, *American Land Planning Law* § 143.03, at 157 (1985); *see also Lewis v. Medina*, 87 Wn.2d 19, 23, 548 P.2d 1093 (1976).

[40]*E.g., Hunt v. Anderson*, 30 Wn. App. 437, 441, 635 P.2d 156 (1981); *Department of Ecology v. Pacesetter Constr. Co.*, 89 Wn.2d 203, 210-11, 571 P.2d 196 (1977).

[41]WAC 173-14-150(4).

[42]*Hayes v. Yount*, 87 Wn.2d 280, 287-88, 552 P.2d 1038 (1976); *Skagit Cy. v. Department of Ecology*, 93 Wn.2d 742, 750, 613 P.2d 115 (1980); William H. Chapman, *Substantive Decision-Making Under the Washington Shoreline Management Act*, 9 U. Puget Sound L. Rev. 337, 353-54 (1986).

cannot alter the plain meaning of the Master Program as applied to the case before it.

■ We agree. The proper action on a land use decision cannot be foreclosed because of a possible past error in another case involving different property. No authority is cited for the proposition that the Board can be estopped from enforcing existing regulations by prior decisions not ever even considered by the Board. In *Mercer Island v. Steinmann*, 9 Wn. App. 479, 483, 513 P.2d 80 (1973), the court stated that a municipality is not precluded from enforcing zoning regulations if its officers have failed to properly enforce zoning regulations. That court explained that the elements of estoppel are wanting. The governmental zoning power may not be forfeited by the action of local officers in disregard of the statute and the ordinance; the public has an interest in zoning that cannot be destroyed.[43] Therefore, the landowner's argument that the action of the Board is arbitrary or capricious is not well taken. First, the Board never reviewed the 1980 neighbor's variance decision and its review would have been de novo. Second, the Department is not estopped from attempting to enforce zoning law because of a prior decision regarding other property.

Given the variance criteria in effect at the time the variance application was made, the standard of review, the deference that we accord to the Board's decisions, and the failure on the part of the landowner to carry his burden to show that water dependent recreational uses of his very small piece of property are not reasonable under these cir-

---

[43]*Mercer Island v. Steinmann*, 9 Wn. App. 479, 483, 513 P.2d 80 (1973) (quoting *V.F. Zahodiakin Eng'g Corp. v. Zoning Bd. of Adj.*, 8 N.J. 386, 86 A.2d 127 (1952)). *See also Ford v. Bellingham-Whatcom Cy. Dist. Bd. of Health*, 16 Wn. App. 709, 716 n.1, 558 P.2d 821 (1977); 3 Robert M. Anderson, *Zoning* § 20.56, at 554-55 (3d ed. 1986) (an applicant is not entitled to a variance on a substandard lot simply because the board of adjustment has granted such a variance to the owner of a lot similarly situated and in the same neighborhood); *Zoning* § 20.25, at 447 (a landowner is not entitled to a variance solely because adjacent land is being used for a purpose the same or similar to that of the proposed use); *St. Clair v. Skagit Cy.*, 43 Wn. App. 122, 127, 715 P.2d 165 (1986) (granting a variance based on proximity of similar but nonconforming uses could prove destructive of the zoning objectives).

cumstances, we cannot conclude that the Board's decision was clearly erroneous, or arbitrary or capricious.

The decision of the Court of Appeals is affirmed and the case remanded to the Superior Court for reinstatement of the decision of the Shorelines Hearings Board.

UTTER, BRACHTENBACH, DOLLIVER, DURHAM, SMITH, GUY, JOHNSON, and MADSEN, JJ., concur.