IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 12, 2022 Session

**CITY OF MEMPHIS v. BEVERLY PRYE**

**Appeal from the Chancery Court for Shelby County**
**No. CH-20-0353-1  Walter L. Evans, Judge**
_____

**No. W2020-01716-COA-R3-CV**
_____

This appeal involves an employment termination case in which an employee of the City of Memphis witnessed the signing of a will, but after the decedent's death, the probate court determined that the will submitted to probate did not bear the genuine signature of the decedent.  Following an administrative appeal, the Civil Service Commission for the City of Memphis unanimously affirmed the decision of termination.  The employee filed a petition for judicial review with the chancery court.  The chancery court reversed the termination of the employee finding that the Civil Service Commission's decision to sustain her termination was arbitrary and capricious.  The chancery court reinstated the employee with full backpay and benefits.  The City of Memphis appeals.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which ARNOLD B. GOLDIN and KENNY W. ARMSTRONG, JJ., joined.

Jennifer Sink, City Attorney, and Barbaralette G. Davis, Senior Assistant City Attorney, Memphis, Tennessee, for the appellant, City of Memphis.

Darrell J. O'Neal and Misty L. O'Neal, Memphis, Tennessee, for the appellee, Beverly Prye.

**OPINION**

**I.    FACTS & PROCEDURAL HISTORY**

Ms. Beverly Prye was a battalion chief with the Memphis Fire Department ("the MFD") who had been employed with the City of Memphis ("the City") for twenty-one years before she was terminated as an employee.  From 1990 until 2011, Ms. Prye rose

through the ranks of the MFD as a fire recruit private, firefighter, driver, lieutenant, and battalion chief. Additionally, she served as an instructor who taught others how to fight fires; a liaison who organized funerals for the families of fallen firefighters; and an assessor who travelled across the country to grade "up and coming" firefighters to be lieutenants and chiefs. According to Ms. Prye's testimony, she was "well-respected," "led a decorated career," and put her "heart and soul" into the job.

Mr. Ulysses Jones, Jr., who was also an employee with the MFD, was instrumental in helping Ms. Prye get her start with the MFD. Over the years, Ms. Prye explained that the two of them bonded and became "very good friends." Toward the end of Mr. Jones's career, Ms. Prye stated that he expressed his intentions to marry his girlfriend, Ms. Sandra Richards. In February 2010, Ms. Prye received a call from Mr. Jones who asked her "to do something really important for [him]." Later that day, Ms. Prye went to a residence, the location of which was provided by Mr. Jones. When she arrived and entered the house, she learned that he needed her to witness and sign his Last Will and Testament. She stated that she watched Mr. Jones sign the document, but only glanced at it. She then signed the document as a witness and did not review it. She later stated that she was in a hurry and was "in and out" in ten minutes or less. Ms. Prye also stated that she couldn't remember any of the content of the document, including the identity of any beneficiaries. She further explained that she was not surprised when Mr. Jones told her what the document was because Mr. Jones intended to marry Ms. Richards. She also explained that she had known Mr. Jones for more than twenty-five years, had signed things for him in the past, and signed the document as a witness at his request.

Mr. Jones died in November 2010, and as a result, Ms. Richards filed a petition to admit his purported Last Will and Testament ("the Will") to probate.[1] Thereafter, the two children of Mr. Jones filed a petition in Shelby County Probate Court contesting the validity of the Will. In May 2011, the probate court entered an order concluding that the Will did not bear the genuine signature of Mr. Jones and that the Will was therefore invalid. The probate court made this conclusion after two expert witnesses testified that the signature was not Mr. Jones's genuine signature. The probate court heard testimony from several other witnesses, which included Ms. Avis Langford-Brannan, Ms. Annette Davis, and Ms. Prye who all were listed as witnesses at the conclusion of the Will. When Ms. Prye was later questioned by Sergeant Amber Webb, she summarized the contents of her testimony at the probate court hearing as follows:

> Q: So the will that was brought up in court[,] you would have no way of remembering if that was the same exact content that was in the will that you signed?

---

[1] We note, and will discuss further *infra*, there is no proof in the record that the document which Ms. Prye witnessed was the same document ultimately offered for probate by Ms. Richards. Additionally, the record shows that the page bearing Ms. Prye's signature was on a different page than that of Mr. Jones.

A: Well, they just asked me if that was my signature.
Q: So was that signature did it appear to be yours?
A: Yes. Yes it was mine. Yes.
Q: But as far as the content[,] you couldn't tell me if that was the same content?
A: We didn't read the content in court.

Ms. Richards also testified, but the probate court "found her testimony to be evasive at best, and dubious as to trustworthiness." The probate court noted in its order that the Will was prepared on Ms. Richards's laptop, was given to her after it was signed, and was kept in her home. Further, Ms. Richards admitted to disassembling her laptop, throwing the hard drive in the Mississippi River, and putting the remainder of her laptop in the garbage after the commencement of the litigation in probate court. The probate court noted that either Ms. Richards, Mr. Jones's ex-wife, or Mr. Jones himself "led a double life," implying that one of them was "not telling the truth" according to the testimony.

Afterward, an administrative investigation was opened by the Memphis Police Department ("the MPD") pertaining to the submission of the Will in which Ms. Prye was listed as a suspect. Upon conclusion of the investigation, the report was forwarded to the Division of Fire Services ("the Division") for administrative review. Ms. Richards, Ms. Langford-Brannon, and Ms. Prye were arrested in December 2011 for their involvement in the Will. Ms. Prye was charged with fabricating/tampering with evidence, two counts of forgery, and five counts of aggravated perjury. Several media outlets broadcasted stories regarding the arrests, which brought embarrassment and shame to the City and the MFD. However, all charges against Ms. Prye were eventually expunged from her record.

The Division held an administrative hearing on the matter and decided to terminate Ms. Prye as an employee. The notice of termination provided to Ms. Prye stated in part as follows:

> During the Administrative Hearing, you were asked to explain the circumstances surrounding your involvement in witnessing the Will of the late Ulysses Jones, Jr. and you stated that considering the circumstances (legal issues) you would be as forthcoming as possible as you had been in the past during the preliminary investigations. You stated that you had been asked by Ulysses Jones Jr. to witness a Will which you did. You stated that you did not read the document prior to or after the signing. You added that a few months later, you found out that the Will had been submitted to Probate Court which led to all parties being subpoenaed to court and required to testify.
>
> You offered that the Jones Family hired handwriting experts to testify in court, but Sandra Richards did not. In addition, you stated that you learned

prior to the arrest that you had been indicted and now appearing in an administrative hearing fighting for your life. When asked if you had conspired with others to submit to the courts a Will that was not authentic, you stated that you had not. You asked the Investigative Committee to take into consideration everything you had done in the last twenty-one years, stand behind you until the legal process is finished, give you a chance to clear your name and get out of this mess.

. . .

Considering the facts of this case and the preponderance of evidence it is my decision with the concurrence of the Investigative Committee that you are terminated effective December 19, 2011.

The notice also referenced Ms. Prye's arrest and charges. According to the notice, Ms. Prye was charged with violating the following:

**Division of Fire Services Operations Manual, Volume 100, Rules and Regulations**

Section 102.01, Page 2, Regulation 9
Members shall not exhibit conduct either on duty or off duty that is in breach of public trust.

Section 102.01, Page 2, Regulation 10
Members shall not exhibit conduct, either on duty or off duty that could be considered unbecoming a member of the Fire Division or City of Memphis.

Section 103.01, Page 1, General Provision 1
Employees shall be required to provide complete and accurate information during investigations when requested by a Supervisor or members of the Labor Relations Bureau of the City of Memphis.

Section 103.01, Page 1, General Provision 4
Refusal of an employee to give complete and accurate information shall be grounds for disciplinary actions.

Section 103.01, Page 3, General Provision 11 (Major Violations)

m) Failure to give true statements at Administrative Investigations.
r) Arrest, incarceration or conviction of a criminal offense whether misdemeanor or felony.
s) Conduct unbecoming a member of the Memphis Fire Department or City

of Memphis.

**City of Memphis Personnel Manual**

PM 38-02, Section 38-00, Page 4, Paragraph 2
None of the aforementioned will be deemed to prevent the dismissal, demotion, suspension, or other disciplinary action of an employee for just cause. Just cause shall exist when the employer has a reasonable basis for the action taken even though such cause is not contained among those mentioned above.

PM 62-12, Section 62-00, Page 1, Paragraph 1
City employees, as integral members of City of Memphis Government, shall adhere to acceptable business principles in matters of personal conduct and behavior and exhibit a high degree of personal integrity. This not only involves respect for the rights and feelings of other City employees, but demands that City employees refrain from any conduct or behavior that is criminal or illegal, or that might be personally harmful to co-workers and City of Memphis Government, or that could be viewed unfavorably by the public at large.

PM 62-12, Section 62-00, Page 1, Paragraph 2
Therefore, City employees are expected to behave in a professional manner by conducting themselves in a way that best represents City Government and to exercise appropriate conduct and judgment at all times.

PM 62-12, Section 62-00, Page 1, Paragraph 4
City of Memphis Government employees are required to accept assigned job responsibilities, adhere to rules of conduct at all times, and shall not commit criminal or illegal acts against the City of Memphis, other City employees, or the public at large. Violation of this policy shall subject City employees to disciplinary action up to and including termination and/or possible criminal prosecution for either a criminal or illegal act.

Thereafter, Ms. Prye appealed her termination to the City's Civil Service Commission ("Commission") for the City. For approximately eight years, the matter was held in abeyance pending the resolution of Ms. Prye's related criminal matter.

After Ms. Prye's charges were expunged, the Commission ultimately held its hearing on the matter in January 2020. At the hearing, Ms. Prye maintained that she signed the document at Mr. Jones's request, received no compensation or benefit for the same, and saw Mr. Jones sign the document. She testified that she told the truth when she was questioned about the Will during the investigation. She stated that she did not abuse her

responsibility as a battalion chief by going to sign the Will and that she had no ill intent. She also stated that she had never been demoted and had never had any discipline imposed against her.[2] She believed that she was hastily fired and explained that employees who had committed domestic violence and other crimes only received suspensions and were actually promoted later on in their careers. She concluded that her reputation was dragged through the media and everything she had done in the past twenty-plus years "went down the drain."

Sergeant Amber Webb was the lead investigator in the MPD's administrative investigation involving Ms. Prye. During the investigation, Ms. Prye provided a civilian witness statement in which she was questioned by Sergeant Webb. In her statement, she stated that Mr. Jones did not discuss the particulars of the document with her, and that she observed Mr. Jones and the other witnesses sign the document. She also stated that she did not observe anyone make any changes or edits to it. Ms. Prye stated that she did not know why Mr. Jones felt the need to compose a Last Will and Testament, but she had implied that it might have been related to his intention to marry Ms. Richards. She also explained that she did not get a chance to examine the content of the Will in probate court; rather, she was only asked about her signature.

The investigation found that Ms. Prye violated personal conduct and truthfulness policies.[3] Sergeant Webb explained that any conduct that violates policies and procedures and puts a bad light on either the City or a particular department fits within personal conduct. She examined the reports provided by both forensic document examiners and relied on the fact that the experts found the Will to be fraudulent. However, she admitted that there was no other proof that Ms. Prye did not see Mr. Jones sign the Will or manipulated the Will for her benefit. She stated that Ms. Prye was not penalized for only glancing at the Will and not reading it. Furthermore, she stated that Ms. Prye's signature was not forged; only Mr. Jones's signature was examined. She determined Ms. Prye did not benefit from or receive compensation for the Will. Additionally, Sergeant Webb relied on various articles from the media around the time of the investigation in which Ms. Prye was named. She explained that the articles were part of the investigation because of the publicity that brought a negative light to the MFD. Sergeant Webb's report was forwarded to the Division for administrative review once the investigation was completed.

Director Gina Sweat was on the panel that interviewed Ms. Prye during the administrative hearing held by the Division. She stated that the Division came to its

---

[2] It was later clarified that Ms. Prye had received a written reprimand and an oral reprimand in the past. However, the reprimands are no longer considered as a "progressive discipline" after a certain period of time has passed. Therefore, Ms. Prye's past reprimands were not considered as a part of the MFD's decision to terminate her employment.

[3] Sergeant Webb explained that these were policies of the MPD. However, the MFD did not have any type of internal affairs investigators, so the MPD would investigate some cases as requested by the MFD. The MPD would use general policies of the City and the policies of the MPD, and would make a recommendation. Afterward, the MFD would determine what, if any, discipline to apply.

decision after examining all of the documents, considering the seriousness of the offense, and considering what is expected of the conduct of firefighters. She explained that the public expects firefighters to display a degree of integrity and trustworthiness and that it is even more incumbent on battalion chiefs to lead by example and display a higher degree of those qualities. However, she admitted that there was no proof that Ms. Prye fraudulently signed a document and Ms. Prye's signature had not been in question. Additionally, there was no testimony or evidence that disputed that Ms. Prye went to the address provided by Mr. Jones, was asked by Mr. Jones to sign the document, and signed it. Ms. Prye did not forge any documents according to the proof, but she witnessed a document that was determined to have a forged signature on it. Director Sweat agreed that the probate court's order did not have anything to do with the perjury charges Ms. Prye later received. She explained, however, that she did consider that Ms. Prye signed the Will as a witness saying that Mr. Jones's signature was on the Will. According to her, that proved she was not being truthful. She concluded that Ms. Prye's violation was that she signed a Last Will and Testament as a witness that was later determined not to have Mr. Jones's genuine signature, she testified to that during the probate court proceedings, and was not truthful during the investigation when questioned about that.

Director Sweat also testified about how the Division determined that termination was the appropriate discipline for Ms. Prye. One of the primary drivers in their decision-making was their consideration of the seriousness of the violation:

> [W]e viewed this conduct as a very serious infraction of our rules of conduct, unbecoming of a firefighter, disciplining trustworthiness issues that were determined through the probate court, that those actions were, basically, not truthful, bearing a court proceeding. And that's conduct that we felt like was not becoming of a firefighter, let alone, a battalion chief with the [MFD].

Director Sweat explained that Ms. Prye "was not honest during a court proceeding," "was charged with perjury," and "was not forthcoming and honest . . . in response to our questions." Thus, she stated that the lack of trustworthiness and the conduct that brought embarrassment and shame to the City and the department were their major considerations. She stated that the Division also considered the judge's decision and the testimony from the forensic document examiners. Other considerations included the following: the length of service and previous record of the employee; reasonable consistency in applying similar penalties to similar offenses; the prospect that disciplinary action may play a rehabilitative role; and the attitude and conduct of the employee throughout the investigation and personal interview. The Division did not consider any mitigating circumstances.

After the hearing, the Commission reached its decision on February 19, 2020. The Commission found no reason to disagree with the probate court's ruling or the logic applied in reaching its decision that Mr. Jones did not sign the Will. The Commission noted that the probate court's order was final and not appealed by Ms. Richards. As a result, the

Commission stated that "the only conclusion this panel can reach is that Ms. Prye perjured herself[.]" The Commission concluded that its decision was "straightforward," stating that "Ms. Prye lied about her actions and misrepresented them" to a judge and to her superiors at the City. The Commission explained that "Ms. Prye's deceit was clearly established in the Probate proceeding" and Ms. Prye was "held to be deceitful by an esteemed sitting Shelby County Judge." Therefore, the Commission unanimously affirmed the decision to terminate Ms. Prye as an employee.

In March 2020, Ms. Prye filed a petition for judicial review in the chancery court, challenging the Commission's decision that upheld her termination. Ms. Prye argued that the Commission's decision to sustain her termination was arbitrary and capricious because there was no evidentiary support in the record. Ms. Prye also argued that the Commission's findings, inferences, conclusion, and its decision did not meet the requirements set forth in Tennessee Code Annotated section 4-5-322(h). The City filed an answer requesting that the chancery court dismiss the petition and deny Ms. Prye any relief. After a hearing, the chancery court entered its order on November 30, 2020. The chancery court found that the Commission's decision to sustain Ms. Prye's termination was arbitrary and capricious in violation of Tennessee Code Annotated section 4-5-322(h)(4). The chancery court concluded that the Commission disregarded the evidence presented at the Commission hearing and misrepresented the order that was presented into evidence from the probate court. Specifically, the chancery court stated:

> The Commission totally disregarded the fact that the Probate Court judge found that Ms. Sandra Richards'[s] testimony was, 'evasive at best, and dubious as to trustworthiness,' and made no such finding for Petitioner Beverly Prye. The Commission even found that, 'The Will purports to leave all of Mr. Jones'[s] property and estate to Sandra E. Richards and appoints her as 'Executor without bond or security.' At minimum, the Commission's finding that the Will left all of Mr. Jones'[s] property and estate to Sandra E. Richards shows that there is another reasonable possibility that was not considered by the Commission—that Sandra E. Richards altered the original will and kept the original attestation signatures of the original Last Will and Testament, which unfortunately, is commonplace with a high-profiled individual like Decedent was.[4]

Moreover, the chancery court pointed out that Ms. Prye's termination letter stated that she was terminated for her arrest when there was no evidence of the charges or of any conviction in the record to support the charges. The chancery court reversed the termination of Ms. Prye and reinstated her as a battalion chief with the MFD with full backpay and benefits. Thereafter, the City timely filed an appeal.

---

[4] Mr. Jones was a former elected official, having served as a Tennessee State Representative.

## II.   ISSUES PRESENTED

The City presents the following issues for review on appeal, which we have slightly restated:

1. Whether the chancery court failed to apply the appropriate standard of review pursuant to Tennessee Code Annotated section 4-5-322; and
2. Whether the chancery court erred in reversing the decision of the Commission which determined by a preponderance of the evidence that the City's decision to terminate Ms. Prye was reasonable in light of the entire record.

Ms. Prye presents the following issues for review on appeal, which we have slightly restated:

1. Whether the Commission erred when it failed to consider Ms. Prye's evidence of inconsistent treatment; and
2. Whether this Court can affirm the decision of the chancery court because the City failed to present any proof of a compelling government interest when it treated Ms. Prye harsher than similarly situated males.

## III.   STANDARD OF REVIEW

### *Judicial Review of the Commission's Decision*

"When reviewing administrative decisions, trial courts and appellate courts use the same standard of review." *A-1 Waste, LLC v. Madison Cnty. Mun. Solid Waste Planning Region Bd.*, No. M2013-02265-COA-R3-CV, 2015 WL 4594160, at \*7 (Tenn. Ct. App. July 20, 2015) (citing *Martin v. Sizemore*, 78 S.W.3d 249, 275-76 (Tenn. Ct. App. 2001)) (citations omitted). "Courts defer to the decisions of administrative agencies when they are acting within their area of specialized knowledge, experience, and expertise." *Id.* (quoting *Wayne Cnty. v. Tenn. Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 279 (Tenn. Ct. App. 1988)). "[W]e are not permitted to weigh factual evidence and substitute our own conclusions and judgment for that of the agency, even if the evidence could support a different determination than the agency reached." *Ware v. Greene*, 984 S.W.2d 610, 614 (Tenn. Ct. App. 1998); *see* Tenn. Code Ann. § 4-5-322(h); *Humana of Tenn. v. Tenn. Health Facilities Comm'n*, 551 S.W.2d 664, 667 (Tenn. 1977). "We may reject the [Commission's] decision only if a reasonable person would necessarily reach a different conclusion based on the evidence." *Davis v. Shelby Cnty. Sheriff's Dep't*, 278 S.W.3d 256, 265 (Tenn. 2009) (citing *Martin*, 78 S.W.3d at 276)).

Pursuant to Tennessee Code Annotated section 27-9-114, "[j]udicial review of decisions by civil service boards of a county or municipality which affects the employment status of a county or city civil service employee shall be in conformity with the judicial

review standards" provided by the Uniform Administrative Procedures Act ("UAPA"). Tenn. Code Ann. § 27-9-114(b)(1). The UAPA provides in part that "[t]he review shall be conducted by the court without a jury and shall be confined to the record." Tenn. Code Ann. § 4-5-322(g). Subsection (h) provides the scope of judicial review as follows, in relevant part:

> (h) The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the statutory authority of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
>
> (5)(A)(i) Except as provided in subdivision (h)(5)(B), unsupported by evidence that is both substantial and material in the light of the entire record;
>
>> (ii) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact;

Tenn. Code Ann. § 4-5-322(h). "When reviewing a trial court's examination of an administrative agency's decision, the appellate court must determine 'whether or not the trial court properly applied the . . . standard of review' found at Tennessee Code Annotated § 4-5-322(h)." *Wade v. Tenn. Dep't of Fin. & Admin.*, 487 S.W.3d 123, 126 (Tenn. Ct. App. 2015) (quoting *Jones v. Bureau of TennCare*, 94 S.W.3d 495, 501 (Tenn. Ct. App. 2002)) (citation omitted). Furthermore, subsection (i) provides that "[n]o agency decision pursuant to a hearing in a contested case shall be reversed, remanded or modified by the reviewing court unless for errors that affect the merits of such decision." Tenn. Code Ann. § 4-5-322(i).

### Standard of Review for the Commission

We also keep in mind the role of the Commission, which was discussed in a previous decision by this Court:

Section 246 of the Charter of the City of Memphis provides that "[t]he City may terminate, suspend, or demote an employee for just cause, and the employee shall be given a written notice of the reasons for the action taken." Charter of City of Memphis § 246 (renumbered as section 7 under article 34 by ordinance number 3233, adopted Aug. 31, 1982). Moreover, when an employee appeals to the Civil Service Commission for a review of disciplinary action, section 248 provides that "the burden of proof required to sustain the action of the city shall be by a preponderance of the evidence. If, after a presentation of the proof, the commission finds that there exists a reasonable basis for the disciplinary action taken, the action of the City shall be sustained." Charter of City of Memphis § 248 (renumbered as section 9 under article 34 by ordinance number 3233, adopted Aug. 31, 1982).

*City of Memphis v. Civil Serv. Comm'n of City of Memphis*, 238 S.W.3d 238, 243-44 (Tenn. Ct. App. 2007). As the City properly states in its appellate brief, this Court and the chancery court have "the sole duty to determine whether there was material evidence to support the [Commission's] action . . . ." *Austin v. Shelby Cnty. Gov't, Reg's. Off.*, 761 S.W.2d 298, 300 (Tenn. Ct. App. 1988).

## IV. DISCUSSION

We address two issues on appeal which we briefly restate here: (1) whether the chancery court failed to apply the appropriate standard of review; and (2) whether the chancery court erred in reversing the decision of the Commission. Because these two issues are intertwined, we address them together. Pursuant to Tennessee Code Annotated section 4-5-322(h)(4), the chancery court found that the Commission's decision was arbitrary and capricious because the Commission disregarded the evidence presented at its hearing and misrepresented the probate court's order that was presented into evidence. The Tennessee Supreme Court has thoroughly explained this standard:

A decision of an administrative agency is arbitrary or capricious when there is no substantial and material evidence supporting the decision. *Pittman v. City of Memphis*, 360 S.W.3d 382, 389 (Tenn. Ct. App. 2011); *Jackson Mobilphone Co. v. Tenn. Pub. Serv. Comm'n*, 876 S.W.2d 106, 110 (Tenn. Ct. App. 1993). The statute does not define "substantial and material evidence," but it is less than a preponderance of the evidence, *Wayne Cnty. v. Tenn. Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 280 (Tenn. Ct. App. 1988) (citing *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966)), and more than a "scintilla or glimmer" of evidence, *id.* (citing *Pace v. Garbage Disposal Dist.*, 54 Tenn. App. 263, 390 S.W.2d 461, 463 (1965)). A decision with evidentiary support can be arbitrary or capricious if it amounts to a clear error in judgment. *City*

- 11 -

*of Memphis v. Civil Serv. Comm'n*, 216 S.W.3d 311, 316 (Tenn. 2007) (citing *Jackson Mobilphone Co.*, 876 S.W.2d at 110). A decision is arbitrary or capricious if it "is not based on any course of reasoning or exercise of judgment, or . . . disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion." *Civil Serv. Comm'n*, 216 S.W.3d at 316 (quoting *Jackson Mobilphone Co.*, 876 S.W.2d at 111). "If there is room for two opinions, a decision is not arbitrary or capricious if it is made honestly and upon due consideration, even though [a reviewing court] think[s] a different conclusion might have been reached." *Bowers v. Pollution Control Hearings Bd.*, 103 Wash. App. 587, 13 P.3d 1076, 1083 (2000) (citing *Buechel v. Dep't of Ecology*, 125 Wash.2d 196, 884 P.2d 910, 915 (1994) (en banc)) (explaining the "arbitrary or capricious" standard under Washington's version of the Uniform Administrative Procedures Act). The "arbitrary or capricious" standard is a limited scope of review, and a court will not overturn a decision of an agency acting within its area of expertise and within the exercise of its judgment solely because the court disagrees with an agency's ultimate conclusion. *See id.* (citing *Buechel*, 884 P.2d 910 at 915).

*StarLink Logistics Inc. v. ACC, LLC*, 494 S.W.3d 659, 669-70 (Tenn. 2016). The City argues that the administrative record as a whole contains substantial and material evidence supporting the Commission's findings that the termination of Ms. Prye's employment was reasonable. The City contends that the chancery court improperly re-weighed the factual evidence, disregarded the Commission's impression of oral testimony, and failed to consider the entire record. The City explains that the entire record consisted of the probate court order, the notice of termination, a portion of the investigative file, and other relevant documents, but the chancery court focused entirely on the probate court's order instead. After reviewing the record, we respectfully disagree.

The Commission stated in its order that "Ms. Prye's deceit was clearly established in the Probate proceeding" and Ms. Prye was "held to be deceitful by an esteemed sitting Shelby County Judge." However, the probate court's order did not "clearly establish" that Ms. Prye was deceitful. The probate court's order summarized Ms. Prye's testimony as follows:

> Richards'[s] next witness was Prye. Prye is also employed by the [MFD] and is a Battalion Chief. Prye testified that on the morning of February 6, 2010, Mr. Jones called her, referring to her by a name he used—"Road Dog;" that he wanted her to go to [an address] and that Prye only found out why when she arrived at that address. Interestingly enough, it was her testimony that Mr. Jones gave her a specific address, while he was not able to do so for Brannan. Prye testified that she had known Mr. Jones for years and also, that she was a friend of Richards. Her testimony was similar to that of Brannan

- 12 -

as to the events that took place when the document was signed, that Prye arrived in uniform and in a [MFD] vehicle and went into the residence at [the address] through the garage door; Brannan was there as was the Notary . . . , as well as a young lady that was introduced to her as Davis; that Mr. Jones was present and that Mr. Jones told her he wanted her to witness his Will, which then was signed by Mr. Jones and the witnesses, all in the presence of Mr. Jones and each other, as well as in the presence of the Notary; that as with Brannan, the witnesses all signed in the presence of Mr. Jones and in the presence of each other and in the presence of the Notary.

While the probate court went out of its way to find that Ms. Richards was "evasive" and "dubious," the probate court did not specifically address Ms. Prye's credibility as a witness. There was no proof that Ms. Prye forged her signature, manipulated the Will for her benefit, or received compensation or a benefit from signing the Will. Ms. Prye's statements that she went to the address provided by Mr. Jones, saw Mr. Jones sign the Will, and signed the Will as a witness at Mr. Jones's request were not contradicted. In fact, Ms. Langford-Brannan, Ms. Davis, and Ms. Prye all testified that they signed the Will in the presence of each other, the notary, and Mr. Jones. The probate court did not specifically address the credibility of Ms. Langford-Brannan, Ms. Davis, Ms. Prye, or the notary and even stated that portions of Ms. Prye's testimony were "similar to" that of Ms. Langford-Brannan. The probate court then came "to the conclusion that the scientific evidence, i.e., the uncontroverted testimony of the two document examiners, which the Court found was of substantial assistance in the Court's understanding of the evidence, outweighed the testimony of the witnesses and the Notary, and cannot be ignored." Similar to the chancery court, we find that the Commission took "a leap of reasoning," failing to consider what the probate court's order actually established.

Additionally, Director Sweat agreed that the probate court's order did not have anything to do with Ms. Prye's charges, but the charges were still taken into consideration when making the decision to terminate her employment. Ms. Prye's arrest and charges were referenced in Sergeant Webb's report and were covered by media outlets in Memphis. Ms. Prye's notice of termination noted that she was arrested and charged with several offenses as a result of her involvement in the Will. After the decision was appealed to the Commission, it held Ms. Prye's matter in abeyance for approximately eight years in order to allow the resolution of her charges. When the Commission held its hearing, Ms. Prye objected several times to the testimony concerning her charges because the charges were ultimately expunged. The City then argued that the charges were part of the basis for the action it took. The Commission overruled Ms. Prye's objection, which raises the question of why it even held Ms. Prye's matter in abeyance for more than eight years in the first place. Nevertheless, as the chancery court and Ms. Prye's appellate brief noted, the Commission's decision failed to even address the charges in its order. Instead, the Commission concluded that Ms. Prye perjured herself in at least one, if not all, of the following ways: (1) by swearing in the Attestation Clause that she witnessed Mr. Jones

sign the Will; (2) during the Administrative Hearing; and (3) in her sworn testimony at the trial in probate court. In its own words, the Commission stated that this was "the only conclusion this panel can reach." Despite the fact that the probate court's order did not specifically address Ms. Prye's credibility or even mention perjury, the Commission relied on the probate court's order to reach this conclusion. The City states in its appellate brief that Ms. Prye's arrest and charges were the primary basis for the City's termination of her employment. Yet, the Commission wholly disregarded Ms. Prye's arrest and charges in its decision. In fact, her arrest and criminal charges were not even mentioned in the Commission's order.

After reviewing the Commission's order, it is evident that the Commission relied substantially, if not solely, on the probate court's order in making its findings. The Commission's findings and decision were as follows:

## FINDINGS

This three[-]member panel has no reason to disagree with Judge Benham's ruling, or the logic he applied in reaching his decision that is, the two handwriting experts both determined, independently of one another, that Mr. Jones did not sign the Will. Certainly Ms. Richards had the ability to hire her own expert, which apparently[,] she did not. Further, she could have appealed Judge Benham's decision, which apparently[,] she did not since such an Appellate decision was not introduced into evidence at the instant hearing. Therefore, *the only conclusion this panel can reach* is that Ms. Prye perjured herself in at least one, if not all, of the following ways[:] 1) by swearing in the Attestation Clause, (the Affidavit at Page 5 of the Will), that she witnessed Mr. Jones sign the Will, 2) during the Administrative Hearing, and 3) in her sworn testimony at the trial in Probate Court.

The Sections cited by the City which it found Ms. Prye had violated range from 1) exhibiting conduct that is in breach of public trust, 2) exhibiting conduct unbecoming of a member of the Fire Division or the City of Memphis[,] and 3) provide complete and accurate information during investigations when required by a Supervisor, and other similar violations.

## DECISION

Therefore, *this decision is straightforward*. Ms. Prye lied about her actions and *misrepresented them to a sitting Shelby County Judge* and to her superiors at the City. These actions, which were also detrimental to Mr. Jones'[s] offspring, and caused them unnecessary and expensive litigation, as well as unnecessary stress and heartache, is not only unbecoming of a citizen of this great City, but is especially unbecoming of an employee of the

- 14 -

City of Memphis. Since Ms. Prye's deceit was clearly established in the Probate proceeding and *held to be deceitful by an esteemed sitting Shelby County Judge*, and because Ms. Prye's actions were clearly in violation of the applicable Sections cited above, this three[-]member panel of the Civil Service Commission unanimously affirms the City's Decision of termination This Order renders any pending motions moot.

(emphasis added). First of all, it is evident the Commission did not even discuss any of the testimony from its hearing, which consisted of nearly 200 pages of testimony from four different witnesses and discussion between the Commission and counsel for each party. By relying on just the probate court's order, the Commission disregarded the evidence presented at its hearing. As we have already explained, the probate court's order did not specifically address Ms. Prye's credibility as a witness. While we must "defer to [a] trial court's credibility findings, including those that are implicit in its holdings," we emphasize that the probate court chose to specifically address Ms. Richards's credibility, but did not do so for Ms. Prye or the other witnesses to the Will. *Williams v. City of Burns*, 465 S.W.3d 96, 120 (Tenn. 2015) (citations omitted). The probate court even noted that either Ms. Richards, Mr. Jones's ex-wife, or Mr. Jones himself "led a double life," implying that one of them was "not telling the truth" according to the testimony. The probate court then concluded that the Will did not bear the genuine signature of Mr. Jones and was therefore invalid. The probate court's order made no mention of perjury, and yet the Commission reached a conclusion that Ms. Prye had perjured herself. We reiterate that the Commission stated that "Ms. Prye's deceit was clearly established in the Probate proceeding" and Ms. Prye was "held to be deceitful by an esteemed sitting Shelby County Judge." However, the probate court's order lacked any of this language and did not specifically contain such a finding.

We also note that Ms. Prye did not review the contents of the document which she witnessed and Mr. Jones did not discuss the particulars of it with her. She also explained that she did not get a chance to examine the content of the Will in probate court; rather, she was only asked about her signature. However, she consistently maintained that she signed the Will at Mr. Jones's request, saw Mr. Jones sign the Will, and received no compensation or benefit for signing the Will. She testified that she told the truth when she was questioned about the Will during the investigation and had no ill intent. Upon judicial review, the chancery court noted:

The Commission's finding that the Will left all of Mr. Jones'[s] property and estate to Sandra E. Richards shows that there is another reasonable possibility that was not considered by the Commission—that Sandra E. Richards altered the original will and kept the original attestation signatures of the original Last Will and Testament, which unfortunately, is commonplace with a high-profiled individual like Decedent was.

- 15 -

Therefore, we emphasize that the probate court found that the will *submitted by Ms. Richards* did not have the genuine signature of Mr. Jones, but that did not necessarily mean that Ms. Prye did not see him sign *a will* when she witnessed it. If Ms. Prye did not review the Will on the day she witnessed it, she would not have known if the one she witnessed matched the one Ms. Richards later submitted to probate court. Furthermore, Ms. Prye explained that the content of the Will was not discussed in the probate court proceedings according to her statement to the MPD. There was a question during oral argument before this Court of whether the Will that Ms. Prye witnessed and signed in February 2010 was different from the Will submitted to probate court in November 2010. Counsel for Ms. Prye responded by noting that this question was not answered by the probate court. Sergeant Webb testified that Ms. Prye's signature was not on the same page as the signature determined not to be the genuine signature of Mr. Jones. While we cannot speculate as to what happened to the Will from February 2010 until November 2010, the probate court noted in its order that the Will was prepared on Ms. Richards's laptop, was given to her after it was signed, and was kept in her home. Further, Ms. Richards admitted to disassembling her laptop, throwing the hard drive in the Mississippi River, and putting the remainder of her laptop in the garbage after the commencement of the litigation in probate court. We agree with the chancery court in that the manipulation of the Will was a reasonable possibility that the Commission did not consider. Thus, the Commission's assumption of "deceit" from the probate court's order was not warranted under the circumstances.

The Tennessee Supreme Court has stated that "[a] decision of an administrative agency is arbitrary or capricious when there is no substantial and material evidence supporting the decision." *StarLink Logistics*, 494 S.W.3d at 669 (citing *Pittman*, 360 S.W.3d at 389; *Jackson Mobilphone Co*, 876 S.W.2d at 110). Furthermore, "[a] decision is arbitrary or capricious if it "is not based on any course of reasoning or exercise of judgment, or . . . disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion." *Id.* at 669-70 (citing *Civil Serv. Comm'n*, 216 S.W.3d at 316 (quoting *Jackson Mobilphone Co.*, 876 S.W.2d at 111). As such, we agree with the chancery court in that the Commission's decision was arbitrary and capricious. The Commission's decision lacked substantial and material evidence to support its conclusions and disregarded the facts or circumstances of the case. *Id.* We conclude that the chancery court applied the appropriate standard of review pursuant to Tennessee Code Annotated section 4-5-322.

Moreover, because we have already found that the Commission's decision was arbitrary and capricious in order to determine if the chancery court applied the appropriate standard of review, we conclude that the chancery court did not err in reversing the decision of the Commission. As we have previously discussed, the Commission's decision was arbitrary and capricious because "there was no substantial and material evidence supporting the decision" and the Commission's decision "disregard[ed] the facts or circumstances of the case without some basis that would lead a reasonable person to reach

- 16 -

the same conclusion." *Id.* The Commission's decision was woefully inadequate in that it relied solely on the probate court's order to reach its conclusions. In short, the Commission failed to "carefully consider[] the evidence presented to it." *Id.* at 670. Instead, the Commission arrived at its findings by disregarding the entirety of the evidence and misrepresenting the probate court's order.

The probate court's order alone was not a reasonable basis for sustaining Ms. Prye's termination, and just cause therefore did not exist. *See* Charter of City of Memphis § 248 (renumbered as section 9 under article 34 by ordinance number 3233, adopted Aug. 31, 1982). The probate court's order did not establish that Ms. Prye committed a criminal or illegal act, or was ever charged with such an act.[5] Additionally, the probate court's order did not establish by a preponderance of the evidence that Ms. Prye committed a breach of public trust; failed to behave in a professional manner; exhibited conduct considered unbecoming; or provided untruthful, incomplete, or inaccurate information in violation of the MFD or City policies. Because the Commission relied on the probate court's order to reach its decision, and the decision was unsupported by that order, the Commission's decision was arbitrary and capricious and must be reversed.

Like the chancery court, we also find that Ms. Prye's alternative issues concerning Equal Protection are pretermitted because we have found that the Commission's decision to sustain Ms. Prye's termination was arbitrary and capricious.

## V. CONCLUSION

For the aforementioned reasons, we affirm the decision of the chancery court. Costs of this appeal are taxed to the appellant, the City of Memphis, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE

---

[5] The probate court entered its order in May, 2011. Ms. Prye was not charged with any offense regarding the incident until December, 2011.