IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 16, 2025 Session

## STEVE PASCHALL v. PENSION BOARD OF THE MEMPHIS LIGHT, GAS AND WATER DIVISION RETIREMENT AND PENSION SYSTEM, ET AL.

**Appeal from the Chancery Court for Shelby County**
**No. CH-22-1687-2   James R. Newsom, Chancellor**

———————————————————

**No. W2025-00076-COA-R3-CV**

———————————————————

The petitioner was employed at the Light, Gas, and Water Division of the City of Memphis ("MLGW").  During his employment, the employee participated in a pension plan.  The employee was terminated in July 2016 but did not apply for his pension benefits.  In 2022, the employee filed two retirement applications that were rejected.  Both applications sought the payment of pension benefits retroactive to the 2016 termination date.  The employee appealed to MLGW's pension board.  The pension board accepted the second application and instituted the payment of benefits as of its filing date.  However, the board declined to award benefits retroactive to 2016.  The employee sought judicial review in the Shelby County Chancery Court.  The court held that the decision to deny the first application was arbitrary and capricious and ordered the payment of benefits to be deemed effective as of the date it was filed.  However, it found that the decision to deny the claim for retroactive benefits stemming from the date of termination was not arbitrary and capricious as it was in accordance with the pension system's plan.  The employee appeals.  We affirm.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which ANDY D. BENNETT, J., and J. STEVEN STAFFORD, P.J., W.S., joined.

John W. Simmons and Beth Brooks, Memphis, Tennessee, for the appellant, Steve Paschall.

Thomas L. Henderson, Robert D. Meyers, and M. Greer Bryant, Memphis, Tennessee, for the appellees, Pension Board of the Memphis Light, Gas and Water Division Retirement and Pension System, The Light, Gas and Water Division of the City of Memphis, Tennessee, and the Board of Commissioners of the Light, Gas and Water Division of the City of Memphis, Tennessee.

## OPINION

## I. Facts & Procedural History

On December 11, 1989, MLGW hired Steve Paschall as an engineer in its Gas Engineering Department. Mr. Paschall worked for MLGW continuously for more than 25 years. While employed, he contributed 8% of his earnings to the MLGW Retirement and Pension System. Mr. Paschall was terminated on July 13, 2016, at the age of 58, for certain discriminatory comments allegedly made to a female co-worker. In response, he filed a complaint against MLGW in federal court in which he alleged discrimination based on race and sex, retaliation, hostile work environment, and improper denial of Family Medical Leave Act benefits. On January 11, 2022, the United States District Court for the Western District of Tennessee entered an order granting a motion for summary judgment in favor of MLGW. This order was never appealed.

Subsequently, on May 10, 2022, Mr. Paschall submitted his first application for retirement benefits to MLGW's Retirement and Pension Department ("the Department"). Mr. Paschall altered the Department's standard application to include a "notice of non-retaliation requirement" as well as a paragraph claiming that he had been wrongfully terminated in 2016 but was now "electing for full retirement benefits, retroactively effective to" the date of his termination. The Department sent Mr. Paschall a letter informing him that the application was "not in acceptable form" due to those alterations. The Department attached a blank application that it requested be returned "without changes." The letter also explained that Mr. Paschall's retirement date would be the date upon which he submitted an acceptable application, not his termination date.

Upon receiving this response, Mr. Paschall obtained legal counsel. Mr. Paschall's counsel responded to the Department by letter dated June 28, 2022, and submitted a new application on his behalf. The application was completed and contained a notice to review an attached document that was the same "notice of non-retaliation requirement" which had been inserted into the original application. The Department deemed the attachment to be another "inappropriate attempt to alter the uniform Retirement Application." However, the Department informed Mr. Paschall that if he submitted the application with his date of termination listed as the commencement date for his benefits, then it would review the claim. Subsequently, if the Department determined that this date was inappropriate, Mr. Paschall could then appeal the decision to MLGW's Pension Board. This would also permit the Department to commence his prospective benefits. Mr. Paschall responded that the Department had "ma[d]e clear that [it] [was] denying [his] application for retroactive benefits" and stated he wished to appeal the matter to the Pension Board.

The Department sent Mr. Paschall a letter notifying him that his appeal had been scheduled for October 19, 2022. The letter outlined certain procedures applicable to the

hearing. The letter noted that the Pension Department's counsel, who had authored the correspondence informing him of the issues with the previous applications, would be representing the Department before the Pension Board. Additionally, the letter noted that the "presentations" of the parties would be limited to 20 minutes per side. The letter also informed Mr. Paschall that he could submit written documents supporting his claim to the Pension Board prior to the hearing. The hearing was later postponed until October 26, 2022. During the hearing, it was again announced that both sides would receive 20 minutes to present their arguments. Mr. Paschall's counsel argued that he was vested in non-forfeitable pension benefits and therefore was entitled to receive those benefits retroactive to his termination date. He claimed that the pension plan did not require a participant to apply to receive benefits but instead required the Department to "go find them." Conversely, the Department's counsel argued that the pension plan requires a participant to apply in order to receive benefits and explicitly states that no participant may raise a claim for retroactive benefits based on failure to do so. After the arguments concluded, the Pension Board's chairman announced that its deliberations would be held in private, and both sides were asked to leave. The remainder of the meeting proceeded, and the deliberations were the meeting's final agenda item. At this point, the Pension Board determined that its previous announcement had been incorrect and the proceedings would remain public. The Pension Board maintained the publicity of the meeting, recorded their deliberations, and apologized for the mistake. The Pension Board determined that it would accept the application submitted on June 28, 2022, and Mr. Paschall's retirement benefits commencing from that date. However, the Pension Board also determined that the pension plan did not permit an award of retroactive benefits in this instance. It relied on the pension plan's plain language that required a participant to apply in order to receive benefits and prohibited the award of retroactive benefits where he or she failed to do so.

On December 15, 2022, Mr. Paschall filed a petition for judicial review in the Shelby County Chancery Court. He again claimed that his retirement benefits should have commenced upon his termination and he was entitled to benefits retroactive to that date. Additionally, he claimed that the Pension Board's procedures had violated his due process rights and the terms of the Uniform Administrative Procedures Act ("UAPA") as he was not "provide[d] the procedures and rights required by the [UAPA] for contested cases." *See* Tenn. Code Ann. § 4-5-301. He similarly claimed that the decision of the Pension Board was arbitrary and capricious, in violation of statutory authority, made upon unlawful procedure, and unsupported by substantial and material evidence. The parties engaged in extensive briefing, and a hearing was held in the chancery court on August 22, 2024. Mr. Paschall's counsel first requested that the court "at least go back" and hold that benefits should have commenced upon the filing of the first application. However, he maintained that Mr. Paschall was entitled to retroactive payments stemming back to his 2016 termination date based on the terms of the pension plan. Counsel claimed that the Pension Board's decision effected a forfeiture of Mr. Paschall's benefits, but, as he was vested in those benefits, they were not forfeitable. Counsel argued that several sections of the pension plan demonstrated the Department was required to award him benefits regardless

of whether he applied. He further argued that the terms of the internal revenue code required the plan to make distributions within a specific time period following his termination. Conversely, the Department argued that section 7.6 of the pension plan "just says what it says" and pointed to language stating, "each participant . . . shall be responsible for making application in accordance with the uniform procedures established by the Pension Board." The Department noted that section 7.6 of the pension plan further provides a participant "shall have no claim against the plan for any retroactive payment by reason of failure of such participant . . . to properly or timely apply for benefits." At the conclusion of the hearing, both parties submitted proposed findings of fact and conclusions of law.

The chancery court entered its final order on January 3, 2025. The court first explained that these proceedings did not arise from a contested case pursuant to Tennessee Code Annotated section 27-9-114(a), and therefore, the portion of the UAPA regarding the standards applicable to contested cases did not apply. *See* Tenn. Code Ann. § 27-9-114(a)(2). Rather, the court determined that the case arose pursuant to Tennessee Code Annotated section 27-9-114(b). Accordingly, while the portion of the UAPA regarding contested cases did not apply, its standard of review did. Subsequently, the chancery court affirmed the decision of the Pension Board to deny the claim for retroactive benefits. The court pointed to "the plain meaning of the Plan Document," which provided that a participant was required to apply for benefits. The pension plan also specifically stated that failure to do so would not serve as a ground for the receipt of retroactive benefits. The court held that because the Pension Board's decision followed this language, it was not: (1) arbitrary or capricious, (2) unsupported by substantial and material evidence, (3) in excess of statutory authority, or (4) in violation of statutory provisions. *See* Tenn. Code Ann. §§ 4-5-322(h)(1), (2), (4), (5). Likewise, the chancery court determined that the Pension Board's interpretation of the plan did not violate the internal revenue code section cited by Mr. Paschall.

However, the chancery court did hold that the Pension Board's denial of the May 10, 2022 application was arbitrary and capricious. The chancery court noted that "the sole difference between the First and Second Applications [was] that the 'Notice of Non-Retaliation Requirement' in the First Application covered up the portion of" the first application that pertained to disability retirement benefits whereas the second application contained the paragraph on a separate page. Neither party asserted that disability benefits were sought. Therefore, the applications contained the same information, and it was arbitrary and capricious to deny the first and accept the second. Accordingly, the trial court remanded the case to the Pension Board with instructions "to commence [Mr. Paschall's] retirement benefits effective May 10, 2022." Nevertheless, the trial court deemed the respondents to have been the prevailing parties and denied Mr. Paschall's request for attorneys' fees and expenses. Mr. Paschall filed this appeal.

## II. Issues Presented

The appellant has presented the following issues on appeal, which we have slightly reframed:

1. Whether the chancery court erred when it determined that the Pension Board's construction of the pension plan was not arbitrary and capricious.
2. Whether the chancery court erred when it held that the Pension Board's decision to deny retroactive benefits was supported by substantial and material evidence.
3. Whether the chancery court erred when it determined that the Pension Board's decision to deny retroactive benefits was not made in violation of statutory authority or in excess of such authority.
4. Whether the Pension Board violated Mr. Paschall's due process rights by effecting unlawful procedure.
5. Whether Mr. Paschall should have been awarded prejudgment interest.
6. Whether Mr. Pachall should have been awarded attorneys' fees, expenses, and costs.

For the following reasons, the judgment of the trial court is affirmed.

### III. DISCUSSION

### *A. Standard of Review*

This appeal arises from a petition for judicial review filed pursuant to Tennessee Code Annotated section 27-9-114(b). While the underlying action was not a contested case, an appellate court nonetheless reviews "the decision of a civil service merit board 'affect[ing] the employment status of a county or civil service employee'" in accordance with "the standard of review outlined in the [UAPA]." *Moss v. Shelby Cnty. Civ. Serv. Merit Bd.*, 665 S.W.3d 433, 440 (Tenn. 2023) (quoting Tenn. Code Ann. § 27-9-114(b)(1) (2000 & Supp. 2013)); *see Long v. Chattanooga Fire & Police Pension Fund*, No. E2022-01151-SC-R11-CV, 2025 WL 2902078, at *7 (Tenn. Oct. 13, 2025). As our Supreme Court has previously explained, "the UAPA provides a more narrowly circumscribed standard" of review than the "'broad standard of review used in other civil appeals.'" *Moss*, 665 S.W.3d at 440 (quoting *Tenn. Dep't of Corr. v. Pressley*, 528 S.W.3d 506, 512 (Tenn. 2017)). The UAPA provides that:

> [t]he court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> (1) In violation of constitutional or statutory provisions;

- 5 -

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5)(A)(i) Except as provided in subdivision (h)(5)(B), unsupported by evidence that is both substantial and material in the light of the entire record;

(ii) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Tenn. Code Ann. § 4-5-322(h)(1)-(5)(A).[1]

As our Supreme Court has previously explained, "[r]eviewing courts may only reverse, remand, or modify civil service merit board decisions 'for errors that affect the merits of such decision.'" *Moss*, 665 S.W.3d at 440 (quoting Tenn. Code Ann. § 4-5-322(i)). "Although [this Court's] review of the Board's factual findings is confined to the provisions of Tennessee Code Annotated section 4-5-322, [this Court's] review of matters of law is *de novo* with no presumption of correctness." *Davis v. Shelby Cnty. Sheriff's Dep't.*, 278 S.W.3d 256, 264 (Tenn. 2009) (citing Tenn. R. App. P. 13(d)).

Mr. Paschall has raised arguments concerning both the legal authority of the Pension Board to make this decision pursuant to subsections (1), (2), and (3) in addition to arguments concerning the sufficiency of the evidence pursuant to subsections (4) and (5). Tenn. Code Ann. §§ 4-5-322(h)(1)-(5). To determine whether a decision is arbitrary or capricious pursuant to subsection (4) we consider whether there is "'substantial and material evidence supporting the decision.'" *Moss*, 665 S.W.3d at 441 (quoting *StarLink Logistics Inc. v. ACC, LLC*, 494 S.W.3d 659, 669 (Tenn. 2016)). Our Supreme Court went on to explain this form of review, stating:

'substantial and material evidence' is 'less than a preponderance of the evidence and more than a "scintilla or glimmer" of evidence.' *StarLink Logistics*, 494 S.W.3d at 669 (citation omitted) (quoting *Wayne Cnty. v. Tennessee Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 280 (Tenn. Ct. App. 1988)). 'A decision with evidentiary support can be arbitrary or capricious if it amounts to a clear error in judgment,' *id.* at 669 (citing *City*

---

[1] The Pension Board was not created by any of the provisions listed in Tennessee Code Annotated section 4-5-322(h)(5)(B) and thus its terms are inapplicable.

*of Memphis v. Civ. Serv. Comm'n of Memphis*, 216 S.W.3d 311, 316 (Tenn. 2007)), and 'is not based on any course of reasoning or exercise of judgment, or . . . disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion,' *id*. at 669-70 (alteration in original) (quoting *Civ. Serv. Comm'n of Memphis*, 216 S.W.3d at 316).

*Moss*, 665 S.W.3d at 441. Additionally, as our Supreme Court explained in *Starlink Logistics*:

> "[i]f there is room for two opinions, a decision is not arbitrary or capricious if it is made honestly and upon due consideration, even though [a reviewing court] think[s] a different conclusion might have been reached." *Bowers v. Pollution Control Hearings Bd.*, 103 Wash.App. 587, 13 P.3d 1076, 1083 (2000) (citing *Buechel v. Dep't of Ecology*, 125 Wash.2d 196, 884 P.2d 910, 915 (1994) (en banc)) . . . The 'arbitrary or capricious' standard is a limited scope of review, and a court will not overturn a decision of an agency acting within its area of expertise and within the exercise of its judgment solely because the court disagrees with an agency's ultimate conclusion. *See id.* (citing *Buechel*, 884 P.2d 910 at 915).

*StarLink Logistics*, 494 S.W.3d at 670 (alterations in original).

Mr. Paschall claims that an additional legal principle should guide our review. He submits that "binding Tennessee precedent" provides "[p]ension plans are to be liberally construed in favor of their beneficiaries." Mr. Paschall cites primarily to this Court's opinion in *Long v. Chattanooga Fire & Police Pension Fund*, No. E2022-01151-COA-R3-CV, 2023 WL 8716539, at *9 (Tenn. Ct. App. Dec. 18, 2023), *rev'd,* No. E2022-01151-SC-R11-CV, 2025 WL 2902078 (Tenn. Oct. 13, 2025). However, Mr. Paschall does not provide proper context for this rule. As our Supreme Court explained in its subsequent reversal of this Court's *Long* decision, the "liberal construction doctrine" applies only when the pension plan is ambiguous. *Long v. Chattanooga Fire & Police Pension Fund*, No. E2022-01151-SC-R11-CV, 2025 WL 2902078, at *9 (Tenn. Oct. 13, 2025) (citing *Wyckoff v. Bd. of Admin. of Ret. Sys of Memphis*, 348 S.W.2d 289, 290 (Tenn. 1961)). Accordingly, the liberal construction doctrine does not guide the review of the entirety of the pension board's decision, but instead aids in the interpretation of any policies or terms that are ambiguous. *See Id.*

### B. Construction of the Pension Plan

While separated into three issues on appeal, Mr. Paschall's claims pursuant to subsections (1), (2), (4), and (5) of Tennessee Code Annotated section 4-5-322(h) all center around the Pension Board's interpretation of the pension plan. He claims that the Pension

Board's misinterpretation of the pension plan rendered its decision arbitrary and capricious, unsupported by substantial and material evidence, a violation of statutory authority, and in excess of its statutory authority. Accordingly, as each of these three issues is predicated on the construction of the pension plan, we address them together.

The parties agree that Mr. Paschall became eligible to receive pension benefits when he was terminated on July 13, 2016. Likewise, the appellees have not challenged the chancery court's decision that the rejection of the May 10, 2022 application was arbitrary and capricious. The parties only dispute whether Mr. Paschall was entitled to receive payment for the benefits that he did not receive between July 2016 and May 2022. The Pension Board determined that Mr. Paschall was not entitled to retroactive benefits, and the chancery court held this decision was not arbitrary or capricious and did not violate any statutory or federal law. Mr. Paschall claims that the language of section 7.7 of the pension plan, the terms of the Internal Revenue Code, and the law's abhorrence of a forfeiture demonstrate he is entitled to retroactive payment of benefits stemming from his July 2016 termination date and accordingly the Pension Board's decision was erroneous.

Conversely, the appellees argue that the Pension Board's decision did not violate any of the standards set forth in Tennessee Code Annotated sections 4-5-322(h)(1), (2), (4), or (5). The appellees point to section 7.6 of the pension plan, which requires a participant to apply in order to receive benefits and explicitly prohibits the payment of retroactive benefits based on a participant's failure to apply. Similarly, the appellees claim that there was no forfeiture of benefits, as Mr. Paschall's decision to wait to apply for benefits resulted in an increased "Applicable Benefit Percentage" and did not affect his "Minimum Aggregate Benefit." Additionally, the appellees claim that Mr. Paschall has misinterpreted the terms of the Internal Revenue Code and point to a Treasury Regulation which provides that regardless of the language in section 26 U.S.C.A. § 401(a)(14), the pension plan was permitted to require a participant to apply before the commencement of benefits. *See* 26 C.F.R. § 1.401(a)-14(a).

We begin by considering Mr. Paschall's claims regarding the terms of the pension plan itself. We have reproduced the primary portions of the pension plan in dispute as follows:

6.1 <u>Normal Retirement Benefit</u>.

(a) <u>General</u>. A Participant who retires from the employ of the Division upon or after attaining his/her Normal Retirement Age shall be entitled to receive a Normal Retirement Benefit, which shall be equal to his/her Accrued Benefit determined as of the date he/she retires, calculated in accordance with Article IV, subject to the minimum benefit provisions under subsection (b) hereof and the Cost of Living Adjustments provided in §6.6.

. . .

7.5 <u>Claims</u>.

(a) <u>Procedure</u>.  Claims for benefits under the Plan may be filed with, and on forms supplied by the Pension Department. The Pension Department shall submit all claims to the Pension Board, other than any claim which the Pension Department determines, based on satisfactory evidence available to it, including without limitation any evidence submitted to it by the claimant, is invalid.  If the Pension Department determines a claim is invalid, the Pension Department shall provide the claimant with a written notification that the claim is denied stating the specific reasons for the denial and, where appropriate, an explanation as to how the claimant can perfect the claim and/or submit the claim for review.

. . .

7.6 <u>Failure to Apply for Benefits</u>.

Each Participant . . . shall be responsible for making application, in accordance with uniform procedures established by the Pension Board, for any benefit due him/her under the Plan.  A Participant . . . shall have no claim against the Fund for any retroactive payment by reason of the failure of such Participant . . . to properly or timely apply for benefits under the Plan.

7.7 <u>Unclaimed Benefits</u>.

In the event a Participant . . . becomes entitled to benefits under Article VI and the Pension Board is unable to locate the Participant . . . (after sending a letter, return receipt requested, to the Participant's . . . last known address, and after such further diligent efforts as the Pension Board in its sole discretion deems appropriate), such benefits shall remain in the Fund until such Participant . . . is located or until the sixtieth (60th) day following [a] determination by the Pension Board that all diligent efforts to locate the Participant . . . have been exhausted without success ("the Alternative Distribution Date").  After the Alternative Distribution Date has occurred without location of the Participant . . . , then the benefits shall be deemed to have been forfeited and the Plan shall have no liability to any person with respect to such benefits.  In the event subsequent to such forfeiture the Participant . . . is located and requests his/her benefit, such benefit shall be reinstated and distributed in accordance with the terms and provisions of the Plan.

. . .

10.3 <u>Powers and Responsibilities of the Pension Board</u>. . . .   The Pension Board shall have the following duties and responsibilities:

. . .

(d)    to determine the amount, timing of payment of, and rights of Participants . . . to Plan benefits; to determine the existence of any Participant . . . to take any actions necessary to assure timely payment of benefits to any eligible Participant . . . and to take any actions necessary to assure a full and fair review for any person who is denied a claim to any benefits under the Plan.

Mr. Paschall points to the language of section 7.7 and asserts that it required the Department to institute benefits upon the end of his employment regardless of whether he filed an application.  He claims that the "unable to locate the Participant" language "means the Pension [Department] was supposed to have been looking for and providing benefits to [him]."  He further claims that the Pension Board's decision "turns this obligation around 180° and violates the terms of the Plan."  He claims that the Pension Board "read into" section 7.6 "a procedure for a forfeiture, when that exact topic is specifically addressed in §7.7."  Mr. Paschall claims that any forfeiture must have taken place in accordance with section 7.7, but prior to such forfeiture, the Pension Board should have searched for him in order to provide benefits, and failure to do so rendered the forfeiture inappropriate.  He urges this Court to also consider the terms of section 10.3(d) for confirmation of the Pension Board's obligation to seek him out in order to remit his benefits.

Mr. Paschall's argument regarding section 7.7 is predicated largely on the application of the liberal construction doctrine.  He claims that the pension plan must be liberally construed in his favor and, essentially, the Pension Board was required to accept his proposed construction of section 7.7 based on this doctrine.  However, he has not alleged that there exists an ambiguous term which would require application of the doctrine.  As our State Supreme Court recently explained in another case involving the administration of a civil service pension fund, Tennessee Courts do not apply the liberal construction doctrine where the pension plan at issue is unambiguous.  *Long*, 2025 WL 2902078, at *9 (citing *Wyckoff*, 348 S.W.2d at 290).  The Court held that the term at issue was "not ambiguous merely because it [was] undefined" and continued its analysis by applying the plain meaning of term at issue.  *Id.* at *8.  Here, Mr. Paschall has not alleged that any term or section contained in the pension plan was ambiguous, he merely claims that the Pension Department, Pension Board, and chancery court applied the incorrect section of the pension plan to his claim.  As there is no ambiguity, we will review the plain language of the plan and the Pension Board's interpretation of it in accordance with the

standard of review set forth *supra*.

The Pension Board relied on sections 7.5 and 7.6 of the pension plan when coming to its decision. It determined that section 7.5 required "retirement applications be filed 'on forms supplied by' the Pension Department" while section 7.6 required participants to "make application 'in accordance with uniform procedures established by the Pension Board.'" It also determined that the pension plan was "clear and unambiguous that it is the responsibility of the participant to make application for monthly pension benefits" and such benefits "only commence once the participant files an acceptable Retirement Application." These determinations were based on plain readings of the pension plan, which provides, "[e]ach Participant . . . shall be responsible for making application, in accordance with uniform procedures established by the Pension Board, for any benefit due him/her under the Plan." Because Mr. Paschall had not previously filed an application, the Pension Board applied section 7.6 rather than section 7.7. This decision was certainly not arbitrary and capricious, against the weight of the evidence, in excess of statutory authority, or a violation of statutory authority. Rather, it was predicated on a plain reading of the basic terms of the pension plan and given our standard of review, we will not disturb it on appeal. *See Starlink Logistics*, 494 S.W.3d at 670.

Notably, additional provisions contained in the pension plan demonstrate that the Pension Board's interpretation is in harmony with its remaining provisions. For example, the pension plan provides that a participant may elect to receive a partial lump-sum payment of his or her accrued benefit in the amount "between five percent (5%) and twenty-five percent (25%)" in accordance with an "[a]ctuarial [e]quivalent single lump-sum distribution." The pension plan requires that this election "be made prior to the Participant's Benefit Commencement Date" in accordance with the Pension Department's procedures. The retirement application contains a field in which this information is to be included and assessed as the application is reviewed. This election affects the Department's calculation of the standard monthly benefit to be paid. Further, the application seeks information regarding any request for disability retirement, disability in the line of duty retirement, and rehabilitation retirement. The application also requires a participant to designate a beneficiary to whom any survivorship or death benefits will be paid. These requirements demonstrate that the application process serves a purpose and seeks information necessary to calculate a participant's monthly benefit. Conversely, Mr. Paschall has not explained what circumstances would trigger section 7.6's terms if his reading of section 7.7 was correct. His reading of section 7.7 would leave any participant that reached the pension plan's age and service requirements immediately entitled to benefits rather than eligible for them. Accordingly, no application would be required for a participant to receive benefits. This would render section 7.6's requirement for a participant to apply for benefits and its consequences for failure to do so a nullity.

Additionally, the Pension Board's reading of sections 7.5 and 7.6 does not create a mechanism for forfeiture as argued by Mr. Paschall. Mr. Paschall points to the portion of

section 7.6 stating that claims for retroactive benefits due to the failure to apply for benefits will not be accepted and claims the Pension Board "read" a forfeiture into these terms. However, when read in conjunction with the remainder of the pension plan, it is clear that this section does not create a mechanism for forfeiture. Black's Law Dictionary defines a forfeiture as "[t]he divestiture of property without compensation." FORFEITURE, Black's Law Dictionary (12th ed. 2024). Mr. Paschall claims that the denial of retroactive benefits means those benefits were forfeited. The appellees contend that there was no forfeiture because Mr. Paschall remained entitled to his "Minimum Aggregate Benefit" throughout the time in which he had not applied for benefits.[2] The appellees also note that Mr. Paschall's decision to wait to apply for benefits increased his "Applicable Benefit Percentage," which resulted in the payment of a higher "Accrued Benefit Amount."

A participant's "Minimum Aggregate Benefit" is calculated by multiplying his or her accumulated contributions by a multiplier determined based on the years of service he or she has completed when his or her employment ends. Section 6.5 of the pension plan provides that:

> if a Participant, retiring on or after January 1, 1998, dies before he/she has received aggregate payments under the Plan in an amount that is at least equal to the multiple of his/her Accumulated Participant Contributions as of the date of his/her retirement shown in §6.9(b) and no Death Benefit is payable under the Plan, then the multiple of his/her Accumulated Participant Contributions in excess of the payments received shall be refunded to his/her Surviving Spouse, Children, alternative Beneficiaries or estate in accordance with §6.9(b).

Accordingly, as MLGW explains in its brief, despite his decision to refrain from applying for benefits, Mr. Paschall maintained his property interest in his "Minimum Aggregate Benefit" pursuant to the terms of the pension plan. As such, any contributions remaining in excess of those "aggregate payments" would have been remitted to his beneficiaries upon his death. Notably, it appears that the "Minimum Aggregate Benefit" applies to those who never apply for their benefits.

Similarly, the "Applicable Benefit Percentage" is determined based on the age of the participant on the date his or her benefits commence. This percentage increases once a participant exceeds the age of 60 and is "increased for each additional three (3) months of age" the participant reaches up to the age of 62. This percentage is then used as part of a formula to calculate a participant's "Accrued Benefit Amount." This accrued benefit "shall be a monthly benefit, commencing as of the Participant's Benefit Commencement

---

[2] In his reply brief, Mr. Paschall alleges that the appellees failed to make this argument at the chancery court level. However, upon our review of the record, it is clear that the appellees argued that no forfeiture occurred in its briefing before the chancery court.

- 12 -

Date" or in other words, the amount Mr. Paschall will receive on a monthly basis. Mr. Paschall was approximately 58 years and 8 months old when he was terminated. He was approximately 64 years and 6 months old when he filed his first retirement application. Accordingly, his applicable benefit percentage increased from the minimum percentage of 2.25% to the maximum of 2.50%. Therefore, he will receive a greater monthly benefit as a result of his decision to wait to submit an application. As such, Mr. Paschall has not been "divested of property without compensation," and no forfeiture has occurred.

Mr. Paschall also claims that the Internal Revenue Code renders the Pension Board's decision inappropriate pursuant to Tennessee Code Annotated sections 4-5-322(h)(1), (2), (4), and (5). Mr. Paschall points to the terms of 26 U.S.C.A. § 401(a)(14). Section 401 is the portion of the Internal Revenue Code that governs qualified retirement and pension plans. 26 U.S.C.A. § 401. It provides tax advantages to those who participate in qualified plans but requires the plans to comply with its terms in order for them to remain qualified. The parties agree that the pension plan at issue is a qualified plan established in accordance with the terms of 26 U.S.C.A. § 401. Mr. Paschall points to the rule contained in section 401(a)(14), which provides that:

> [a] trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides that, unless the participant otherwise elects, the payment of benefits under the plan to the participant will begin not later than the 60th day after the latest of the close of the plan year in which—
>
>> (A) the date on which the participant attains the earlier of age 65 or the normal retirement age specified under the plan,
>>
>> (B) occurs the 10th anniversary of the year in which the participant commenced participation in the plan, or
>>
>> (C) the participant terminates his service with the employer.
>
> In the case of a plan which provides for the payment of an early retirement benefit, a trust forming a part of such plan shall not constitute a qualified trust under this section unless a participant who satisfied the service requirements for such early retirement benefit, but separated from the service (with any nonforfeitable right to an accrued benefit) before satisfying the age requirement for such early retirement benefit, is entitled upon satisfaction of such age requirement to receive a benefit not less than the benefit to which he would be entitled at the normal retirement age, actuarially, reduced under regulations prescribed by the Secretary.

*Id.* Mr. Paschall asserts that this code section requires benefits to "be commenced in the timeframe provided; and the only exception is if 'the participant elects otherwise.'" *Id.* He

- 13 -

claims that this demonstrates "[i]t was the Pension Board's duty to disclose and seek such a claim" and its failure to do so constituted a "violation of its obligations under the Plan and the IRC." However, as noted by the appellees, a Treasury regulation issued by the Internal Revenue Service sheds some light on this issue.[3] The regulation cited by the appellees provides that:

> **(a) In general**. Under section 401(a)(14), a trust to which section 411 applies (without regard to section 411(e)(2)[)] is not qualified under section 401 unless the plan of which such trust is a part provides that the payment of benefits under the plan to the participant will begin not later than the 60th day after the close of the plan year in which the latest of the following events occurs—
>
> (1) The attainment by the participant of age 65, or, if earlier, the normal retirement age specified under the plan,
>
> (2) The 10th anniversary of the date on which the participant commenced participation in the plan,
>
> (3) The termination of the participant's service with the employer, or
>
> (4) The date specified in an election made pursuant to paragraph (b) of this section.
>
> *Notwithstanding the preceding sentence, a plan may require that a participant file a claim for benefits before payment of benefits will commence.*

26 C.F.R. § 1.401(a)-14(a) (emphasis added). By its plain terms, this regulation demonstrates that the Department was permitted to require a participant to submit an application for the commencement of his or her benefits while remaining compliant with the relevant portions of the revenue code. 26 U.S.C.A. § 401(a)(14). As his arguments were predicated solely on his claim that section 401 required the pension plan to automatically distribute benefits regardless of whether an application was submitted, Mr. Paschall's reliance on this code section is without merit.

Having considered each of Mr. Paschall's arguments and the language of the plan itself, we find that the Pension Board's reading did not violate the terms of Tennessee Code

---

[3] Treasury regulations are regulations issued by the Internal Revenue Service that interpret the Internal Revenue Code pursuant to 26 U.S.C.A. § 7805(a). These regulations "prescribe all needful rules and regulations for the enforcement of [Title 26], including all rules and regulations as may be necessary by reason of any alteration of law in relation to internal revenue." *Id.*

Annotated sections 4-5-322(h)(1), (2), (4), or (5). There is nothing demonstrating that the Pension Board's construction of the pension plan was arbitrary and capricious, unsupported by substantial and material evidence, in violation of statutory provisions, or in excess of its statutory authority. Therefore, we will not disturb its ruling on appeal. Accordingly, the ruling of the chancery court as to Mr. Paschall's first three issues is affirmed.

*C. Due Process and Attorneys' Fees*

Mr. Paschall also claims that the Pension Board's procedures violated his due process rights. It appears that Mr. Paschall's initial due process concerns pertained to the procedures implemented by the Pension Board failing to conform with the provisions of the UAPA concerning contested cases. However, the chancery court later held that these proceedings were subject to the terms of Tennessee Code Annotated section 27-9-114(b), rather than the contested case provisions contemplated in subsection (a). Mr. Paschall does not challenge that holding on appeal but does maintain his due process rights were nonetheless violated. He claims that these violations rendered the Pension Board's decision as having been made upon unlawful procedure or otherwise arbitrary and capricious. He further claims that he was entitled to an award of attorneys' fees and costs based on these violations.

Mr. Paschall points to the Pension Board's decision to exclude him from the meeting during its deliberations and its imposition of a 20-minute time limit for his presentation as violations of his due process rights. He also points to the Pension Board's legal counsel serving in multiple capacities throughout the proceedings as a due process violation. These functions included counsel: (1) acting as opposing counsel during the hearing, (2) authoring the letter informing Mr. Paschall his claim for retroactive benefits had been denied, and (3) engaging in "ex parte" communications with the Pension Board to implement the 20-minute time limitation. Mr. Paschall also claims that the Pension Board's decision to permit "input" from other meeting attendees throughout the hearing violated his due process rights. The appellees contend that the proceedings were held in accordance with the terms of the pension plan, which permits the Pension Department to assess the validity of a claim based on "satisfactory evidence available to it, including without limitation any evidence submitted to it by the claimant." They point to the Pension Board's detailed explanation of its decision to deny benefits. The appellees also note that no evidence concerning "ex parte" communications was submitted, and the rules, such as limiting arguments to 20 minutes, were applied to both the Department and Mr. Paschall. While acknowledging that the parties were "incorrectly asked to leave before deliberations were held," they emphasize that the deliberations took place during the same meeting, which remained public and was recorded.

Mr. Paschall failed to raise these issues during the hearing before the Pension Board. The Tennessee Supreme Court has previously held that "[o]ne appearing before an administrative tribunal must make timely objections to procedural errors and must raise the

errors at the administrative level in order to preserve them for consideration in a petition for judicial review." *McClellan v. Bd. of Regents of State Univ.*, 921 S.W.2d 684, 690 (Tenn. 1996) (citing *In re Billing & Collection Tariffs of So. Cent. Bell*, 779 S.W.2d 375, 380 (Tenn. Ct. App. 1989)). The Court explained that "[t]he administrative tribunal, like the trial court, must be given the opportunity to correct procedural errors" because "[a]llowing parties to acquiesce in procedures, but to challenge those same procedures on appeal is inefficient and unreasonable." *Id.* Tennessee Courts have reaffirmed these principles many times. *See Emory v. Memphis City Schs. Bd. of Educ.,* 514 S.W.3d 129, 152 (2017) (holding that a tenured teacher's complaint regarding a school board's failure to timely conduct her hearing was waived because she did not address the issue during the hearing before the school board); *Bailey v. Blount Cnty. Bd. of Educ.*, 303 S.W.3d 216, 237-38 (Tenn. 2016) (holding that a teaching assistant had waived his due process claim where he failed to argue it during his administrative hearing); *Durham v. Tennessee Registry of Election Fin.*, 666 S.W.3d 459, 468 (Tenn. Ct. App. 2022) (finding a due process concern predicated on the "partiality" of the administrative review board to have been waived where the petitioner failed to seek the disqualification of any biased board members before the board itself).

Mr. Paschall was informed of the time limitation prior to the hearing. His counsel did not object in any correspondence or during the hearing. Likewise, Mr. Paschall's counsel did not object to the Pension Department's attorney serving in overlapping roles throughout the proceedings. Mr. Paschall had also received correspondence explaining counsel's role prior to the hearing and his appearance at the hearing. Similarly, he raised no issues with any purported "ex parte" communications during the hearing and did not seek the recusal of the Pension Department's counsel or any board members who may have been influenced by those allegedly improper communications. Likewise, Mr. Paschall was still present for many of the allegedly inappropriate statements made by the Pension Department's Counsel and other unidentified audience members but raised no objection. Mr. Paschall's counsel also levied no objection when the Pension Board announced that it would exclude the parties during its deliberations.[4] Because he failed to raise any concerns before the Pension Board and acquiesced in its procedures, Mr. Paschall's due process arguments are waived for purposes of this appeal.

Mr. Paschall did claim that his due process rights were violated by the "input on [his] retirement claim from even more unidentified persons" after he had been excluded from the Pension Board's meeting and was not present to object. However, he did not specify what information provided rendered the proceedings unfair or how it affected the Pension Board's decision. *See Moss*, 665 S.W.3d at 440 (explaining that "[r]eviewing

_____

[4] This incident in particular demonstrates the importance of raising such issues before the administrative tribunal. Once the Pension Board reconsidered this decision, it corrected its mistake and ensured the meeting remained open. Had Mr. Paschall's counsel raised this issue during the hearing, the Pension Board would have had the opportunity to come to this decision without having already dismissed the parties.

courts may only reverse, remand, or modify civil service merit board decisions 'for errors that affect the merits of such decision'"). Mr. Paschall has not explained how these communications violated his due process rights or invalidated the Pension Board's deliberations. Given Mr. Paschall's failure to explain this particular issue in any detail, we deem it to have been waived. *Sneed v. Bd. of Pro. Resp. of Supreme Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010) (stating that "where a party fails to develop an argument in support of his or her contention . . . the issue is waived").

Notably, Mr. Paschall also sought an award of attorneys' fees and costs based on these purported due process violations. However, as the due process issue has been waived, the issue of fees is pretermitted.

### D. Prejudgment Interest

Mr. Paschall claims that he should be awarded prejudgment interest on the benefits stemming from the May 2022 application regardless of the outcome on his claim for retroactive benefits. He claims that because the chancery court held the May 2022 application should have been granted, it should have also awarded him prejudgment interest. Mr. Paschall asserts that we review this issue pursuant to our normal standard of review provided in Tennessee Rule of Appellate Procedure 13(d). However, a trial court's decision regarding whether to make an award of prejudgment interest is a matter of discretion. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). Accordingly, we review the trial court's ruling pursuant to the abuse of discretion standard. *Id.* Here, Mr. Paschall has failed to explain how the chancery court abused its discretion by declining to award prejudgment interest. It is not the job of this court to formulate an appellant's arguments for him, and therefore, we deem this issue to have been waived. *Sneed*, 301 S.W.3d at 615 (stating that "where a party fails to develop an argument in support of his or her contention . . . the issue is waived").

### IV. Conclusion

For the foregoing reasons, the ruling of the chancery court is affirmed. Costs of this appeal are taxed to the appellant, Steve Paschall, for which execution may issue if necessary.

s/ Carma Dennis McGee
CARMA DENNIS MCGEE, JUDGE

- 17 -